CITY OF MADISON, Appellant, v. REYNOLDS, Respondent.

*No. 183. Argued September 11, 1970.—Decided October 9, 1970.*
(Also reported in 180 N. W. 2d 7.)

For the appellant there was a brief by *Edwin Conrad,* city attorney, and *Frederick W. Fischer,* assistant city attorney, and oral argument by *Mr. Fischer.*

For the respondent there was a brief by *Harold W. Fager,* attorney, and *Ronald G. Lewis* of counsel, both of Madison, and oral argument by *Mr. Fager.*

HALLOWS, C. J. Madison's general ordinance sec. 12.19 (51) provides, in part, "The following streets . . . are declared to be one-way streets . . . (51) On University Avenue from Bassett Street to the Chicago, Milwaukee, St. Paul & Pacific Railroad Grade Crossing in a westerly direction except for the south lane which is one-way in an easterly direction for only the following described vehicles upon the condition described thereinafter:

"(a) Motor buses

"(b) Taxicabs."

Reynolds admits he was operating his private automobile on May 15, 1969, in an easterly direction on University Avenue in the south lane.

The sole question on appeal is not whether the city can establish a one-way lane in a street but whether the city

of Madison has the power to establish such a lane for the exclusive use of buses and taxicabs and thus exclude the public.

It is beyond question, the state has absolute control of streets and highways and a city has no inherent power over them. Aside from its police or regulatory power, the only power a city has over the use of the streets must be delegated to it by the state. *Milwaukee v. Milwaukee & Suburban Transport Corp.* (1959), 6 Wis. 2d 299, 94 N. W. 2d 584. The basic policy of the state has been to retain control over the highways of this state and to maintain uniform regulation. To that end, local traffic regulations must be consistent with the provisions of chs. 341 through 348 of the Motor Vehicle Code or otherwise expressly authorized.

The city contends the legislature has delegated extensive powers over its streets to cities under the police-power provision of sec. 62.11 (5), Stats.,[1] and since the power granted is broad it had sufficient authority to enact the ordinance unless there is express language of limitation elsewhere in the statutes, which limitation the city claims does not exist. The trial court found sec. 349.03 (2) was an express limitation upon the police power of the city. This section provides, "No local authority may enact or enforce any traffic regulation . . . in any manner excluding or prohibiting any motor vehicle . . . from the free use of all highways, except as authorized by ss. 66.046 and 349.17."

---

[1] 62.11 "(5) POWERS. Except as elsewhere in the statutes specifically provided, the council shall have the management and control of the city property, finances, highways, navigable waters, and the public service, and shall have power to act for the government and good order of the city, for its commercial benefit, and for the health, safety, and welfare of the public, and may carry out its powers by license, regulation, suppression, borrowing of money, tax levy, appropriation, fine, imprisonment, confiscation, and other necessary or convenient means. The powers hereby conferred shall be in addition to all other grants, and shall be limited only by express language."

It is argued this section is not a limitation upon sec. 62.11 (5), Stats., because the term "free use of all highways" is ambiguous and therefore could not be considered an express limitation. Whether the phrase "free use of all highways" means free from tax and toll or unobstructed and accessible to everyone, it is expressed. We find no merit in the argument that ambiguity renders a phrase unexpressed.

We think the trial court was correct in concluding "free use of all highways" meant accessible to everyone and we point out the phrase could also without any inconsistency mean without payment of a toll. As we read sec. 349.03 (2), Stats., it is in addition to the prohibition that traffic regulations cannot be inconsistent with chs. 341 through 348 unless expressly authorized in sec. 349.03 (1). Because of this view the city must find some language in the statutes granting power to enact an ordinance which denies free access to the public of the streets.

There are two exceptions provided for in sec. 349.03 (2), Stats.; a city or village is authorized in sec. 66.046 to barricade streets for play purposes and in sec. 349.17 "to regulate heavy traffic." Obviously, the first exception may bar all use of a street by all members of the public. The second exception restricts use of the street by some members of the public. The ordinance in question does not fall within either of these exceptions.

The city argues the phrase "free use of all highways" cannot include unlimited access to highways because there are many limitations upon the use of highways which are not contained in sec. 349.03 (2), Stats.[2] As we view these limitations, those in ch. 349 are expressly authorized as express regulatory powers and those in ch. 66 are special powers granted under the general

---

[2] Sec. 66.045, Stats., relating to obstruction or excavation in streets; sec. 66.42 (2), urban redevelopment corporations; sec. 66.94 (14), transit authorities; sec. 66.079, parking systems; sec. 349.13, parking regulations; sec. 66.298, pedestrian malls; sec.

municipal law. These statutes relating to specific power are to be construed in derogation of sec. 349.03 (2). Whether these sections are considered to be an implied limitation on sec. 349.03 (2) or a specific delegation of power recognized by sec. 349.03 (1) is not relevant. If the city's argument is correct that the police power in sec. 62.11 is all inclusive subject only to the reasonable exercise thereof, there would be no need for these separate sections specifically delegating authority. Furthermore, sec. 62.11 (5) is not an implied exception to sec. 349.03 (2) by analogy to these specific statutes. We see no logical analogy between a general police power which can be limited and a special power in derogation of a general prohibition.

The city argues the grant of police power in sec. 62.11 (5), Stats., is "in addition to all other grants of power" and is based upon the express language of the statute. However, this fact does not compel the view that the power is without limits. The express language of sec. 62.11 (5) provides the police power may be limited by express language. This contention is only another phase of the argument that the court in construing this section should ignore sec. 349.03 (2) as an express limitation.

It is quite true a municipality's powers over its streets have been broadly interpreted in relation to limiting statutes. We need not review the Wisconsin cases cited on this point or the cases from other jurisdictions because no matter how liberally we construed the police power of a city in relation to its streets we cannot find the right to discriminate against the general public's use of a one-way lane in a street for the benefit of only city buses and taxicabs.

We find no merit in the argument that sec. 194.33, Stats., grants power to the city of Madison to enact the

66.615, designation of sidewalks; sec. 349.10, designation of one-way streets, safety zones, turns and lanes; sec. 349.15, weight limits and classified highways; sec. 349.16, special or seasonal weight limits (heavy vehicles).

ordinance in question. This section does not purport to deal with municipal power but compels compliance by common motor carriers with municipal regulations applicable to them.

It is argued a modern city today requires power to set aside portions of its streets for mass transportation to meet the demands of the public. This poses the question for the legislature whether a city should be given the power to establish streets or lanes for the exclusive benefit of only a portion of the public traffic. But this power is not to be assumed by necessity. If the city needs such power to discriminate in the use of a public street, it must seek it from the legislature.

*By the Court.*—Order affirmed.