Kevin SCHEUNEMANN, John Hahn, Richard Foltz, Dave Ameringer and Rachel Justman, Plaintiffs-Appellants, †

v.

CITY OF WEST BEND, a local government, and James Skidmore, Chief of Police, City of West Bend, in his official capacity, Defendants-Respondents.

Court of Appeals

*No. 92–3073. Submitted on briefs July 28, 1993.—Decided September 29, 1993.*

(Also reported in 507 N.W.2d 163.)

†Petition to review denied.

470

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *William A. Pangman, Christopher A. Mutschler,* and *Rex R. Anderegg* of *Law Offices of William A. Pangman & Associates, S.C.* of Waukesha.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Richard C. Yde,* city attorney of West Bend.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

NETTESHEIM, J.   This is a declaratory judgment action in which the appellants challenge on statutory and constitutional grounds a city of West Bend ordinance banning "cruising" on a limited basis. By summary judgment order, the circuit court upheld the validity of the ordinance.[1] We affirm the order.

---

[1] The trial court's decision actually addressed two versions of the city's cruising ordinance, an original version and an amended version. The appellants' declaratory action initially challenged the original version. While the action was pending, the city amended the ordinance to change the definition of

## FACTS

The facts are undisputed. The affidavit of James Skidmore, Chief of Police for the City of West Bend, recites, in part, the following:

> That for the 6-month period prior to said effective date [of the cruising ordinance] the West Bend Police Department received innumerable reports in increasing frequency from members of the business community, residents, and other citizens of said city who travelled in the area of Main Street between Washington Street and Paradise Drive between the hours of 8:00 P.M. and 4:00 A.M., complaining of profanity, public alcohol consumption, public urination, unreasonably loud music and other noise, loitering, littering, disorderly conduct, traffic congestion and safety hazards, and traffic violations perpetrated by motorists and their passengers while cruising said area as well as by pedestrian onlookers associated with cruising. . . .

Chief Skidmore's affidavit further states that the department's investigations of these complaints verified the problems associated with cruising. In an effort to eliminate or reduce these problems, the city arranged with a local school district to make a school parking lot available to cruisers. However, this experiment simply transferred the problems from the city streets to the parking lot. Thereafter, the police depart-

---

"cruising." By stipulation, the parties agreed that the circuit court should decide the validity of both the original ordinance and the amended ordinance. The circuit court concluded that the original ordinance was unconstitutional as overly broad. This ruling is not before us on appeal. We review only the circuit court's further determination that the amended ordinance is valid on both statutory and constitutional grounds.

ment stepped up its enforcement of state and local traffic laws in the Main Street area. However, this effort produced little effect on the number of complaints and problems associated with cruising.

In response to these problems, the city's common council enacted the cruising ordinance at issue in this case. The preamble to the ordinance states:

> The Common Council find that a public nuisance and a threat to the public health and safety result from the repetitive, unnecessary driving of motor vehicles, also known as cruising, on Main Street.
>
> The Common Council further find that this ordinance will reduce the noise, air pollution and congestion resulting from cruising and make access to the downtown area faster for safety vehicles.

The ordinance goes on to recite an elaborate definition of "cruising."[2] The ordinance limits its prohibition

---

[2] The West Bend ordinance states:

"Cruising" means driving a motor vehicle in the same direction past a traffic control point on a street in the designated area three (3) or more times within a two (2) hour period between the hours of 8:00 P.M. and 4:00 A.M. in a manner and under circumstances manifesting a "purpose" of unnecessary, repetitive driving in such area. Among the circumstances which may be considered in determining whether such purpose is manifested are that such person or any other person present in the vehicle attempts to gain the attention of other motorists or pedestrians or engages them in conversation, whether by hailing, arm waving, horn blowing, or another action or device; that such person or any other person present in the vehicle enters or exits the vehicle directly from or to another vehicle driven in or parked in close proximity to the designated area; that such person or any other person present in the vehicle violates state or municipal traffic regulations or municipal ordinances; or that such person has declared his or her purpose for driving to be that of cruising. The violator's conduct must be such as to demonstrate a specific intent to cruise. No arrest shall be made for a violation of this section unless the arresting officer first

against cruising to a designated area ("Main Street between Paradise Drive and Washington Street") and to a designated daily time span ("between the hours of 8:00 P.M. and 4:00 A.M.").

By declaratory judgment, the appellants challenged the ordinance on statutory and a host of constitutional grounds. At summary judgment, the circuit court upheld the ordinance. This appeal followed.

## STANDARD OF REVIEW

■■■■ Upon review of a summary judgment decision, we apply the standards set forth in sec. 802.08(2), Stats., in the same manner as the trial court. *County of Dane v. Norman*, 174 Wis. 2d 683, 686, 497 N.W.2d 714, 715 (1993). Since there is no disagreement as to issues of fact, we must determine whether the moving parties were entitled to judgment as a matter of law. *See id.* This court decides questions of law independently, without deference to the decision of the trial court. *See id.* As to the constitutional aspects of this case, our review is also *de novo. State v. Bertrand*, 162 Wis. 2d 411, 415, 469 N.W.2d 873, 875 (Ct. App. 1991).

Despite our *de novo* standard of review, we hasten to add that we value a trial court's decision on such questions. Here, the trial court provided a thorough

affords an opportunity to explain such conduct; and no person shall be convicted of violating this section if it appears at trial that the explanation given was true and disclosed a lawful purpose, not unnecessary, repetitive driving. Lawful purposes include traveling to a specific destination by a person whose residence address is in the designated area or by a person whose business or employment requires driving in the designated area, and operating an official emergency or police vehicle in the designated area.

WEST BEND, WI., ORDINANCES § 7.131 (1992) (amending the ordinance to change the definition of cruising).

and well-reasoned decision. We will liberally borrow from it in our discussion.

## CONSTITUTIONAL CHALLENGES

The appellants raise various state and federal constitutional challenges to the city's cruising ordinance. We begin our analysis with the presumption that the ordinance is constitutional and that, in order to prevail, the appellants must demonstrate otherwise beyond a reasonable doubt. *See Richland School Dist. v. DILHR*, 174 Wis. 2d 878, 905, 498 N.W.2d 826, 836 (1993). However, as to the appellants' overbreadth challenge on first amendment grounds, the burden is on the city to establish the constitutionality of the ordinance. *See State v. Mitchell*, 169 Wis. 2d 153, 162–63, 485 N.W.2d 807, 811 (1992), *rev'd on other grounds*, 113 S.Ct. 2194 (1993).

### A.   Overbreadth

The appellants allege that the city's cruising ordinance is overly broad, thereby violating their first amendment right to assemble. The degree of acceptable overbreadth will depend on where the regulated activity falls on the continuum of pure speech at the one extreme and pure conduct on the other. *See, e.g., New York v. Ferber*, 458 U.S. 747, 770–73 (1982); *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973). The parties do not explore this question in their briefs. We conclude, however, that the cruising activity in this case falls closer to conduct than to pure speech.

A law is overbroad when its language, given its normal meaning, is so sweeping that its sanctions may

be applied to constitutionally protected conduct which the state is not permitted to regulate. *Bachowski v. Salamone*, 139 Wis. 2d 397, 411, 407 N.W.2d 533, 539 (1987). "The essential vice of an overbroad law is that by sweeping protected activity within its reach it deters citizens from exercising their protected constitutional freedoms, the so-called 'chilling effect.' " *Id.*

Here, however, the cruising ordinance is specifically limited in its application to a designated daily time span ("between the hours of 8:00 P.M. and 4:00 A.M.") and to a designated area ("Main Street between Paradise Drive and Washington Street"). Moreover, the ordinance prescribes standards for cruising: three vehicular passes in the same direction of a traffic control point within a two-hour period under circumstances manifesting a purpose to cruise. In addition, the ordinance requires attendant circumstances which manifest a purpose to cruise and it offers examples of such circumstances. Also, the ordinance requires that the offender harbor a specific intent to cruise. And finally, the ordinance requires that the officer give the suspected violator an opportunity to explain the driving conduct. If such explanation falls outside the reach of the ordinance, the officer is instructed not to arrest the suspect.[3]

██

Thus, this cruising ordinance carefully carves out, on both a spatial and temporal basis, a narrow slice of driving conduct for regulation. Given these limitations, we conclude that the city has satisfactorily demon-

---

[3] Even if an arrest occurs, the ordinance provides that the suspect shall not be convicted if the explanation offered to the officer was true and disclosed a lawful purpose for the driving conduct.

strated that the cruising ordinance is not unconstitutionally overbroad.

## B.   Constitutional Right To Travel

Besides overbreadth, the appellants raise other constitutional challenges to the city's cruising ordinance.[4] In developing their arguments, the appellants present a separate and detailed analysis under each challenge.

We do not answer the appellants' challenges with corresponding specificity because the common foundation for all of these arguments is the constitutional right to travel.[5] *See Kent v. Dulles*, 357 U.S. 116, 125 (1958); *Ervin v. State*, 41 Wis. 2d 194, 200–01, 163 N.W.2d 207, 210 (1968). Moreover, the answer to all of the appellants' remaining constitutional challenges turns on a common methodology: a determination of

[4] These include: (1) the inherent and fundamental liberty rights recognized in the Wisconsin Constitution recited in the preamble and article I, secs. 1 and 22; (2) the ninth amendment to the federal constitution providing that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people"; (3) the tenth amendment providing that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people"; and (4) the due process clause of the fourteenth amendment.

[5] The appellants also claim a violation of their constitutional right to privacy. *See Griswold v. Connecticut*, 381 U.S. 479, 491 (1965). However, we conclude that under the facts of this case any constitutional violation (privacy or otherwise) necessarily turns on whether the constitutional right to travel is violated. Thus, we do not separately address the appellants' privacy argument. We also note that the circuit court's decision did not separately address any privacy argument which the appellants presumably made in the trial court.

the proper degree of scrutiny which we must apply to the ordinance and a balancing of the governmental interests served by the ordinance against the restrictions imposed by it.

### 1. Scope of Judicial Scrutiny

The parties disagree whether the West Bend cruising ordinance should be reviewed under the strict scrutiny test or the more relaxed intermediate scrutiny test.[6] Under the strict scrutiny approach, we inquire whether the ordinance is no more restrictive than necessary to achieve compelling state interests. *Lutz v. City of York*, 899 F.2d 255, 268 (3d Cir. 1990). *See also Roe v. Wade*, 410 U.S. 113, 155 (1973). Under the intermediate scrutiny test, we inquire whether the ordinance imposes "content-neutral time, place and manner restrictions that are narrowly tailored to serve significant government interests—not necessarily compelling ones—while leaving open ample alternative channels [by which the citizen may exercise the right at issue]." *Lutz*, 899 F.2d at 269. Under the intermediate scrutiny approach, the tailoring requirement does not require that the ordinance employ the least restrictive means of achieving its end, as it would under a full-blown strict scrutiny approach. *Id.*

In *Lutz*, the Third Circuit concluded that a cruising ordinance was properly measured by the intermediate scrutiny test where the constitutional challenge was based on substantive due process. The court placed particular importance on cases from the

---

[6] In its brief, the city cites *Lutz v. City of York*, 899 F.2d 255 (3d Cir. 1990), for application of the rational relationship test. However, *Lutz* applied the intermediate scrutiny test, not the rational relationship test. *Id.* at 268–69.

United States Supreme Court which had applied this test in free speech cases. *Id.* The *Lutz* court reasoned:

> Nonetheless, the time, place and manner doctrine allows certain restrictions on speech to survive under less than fully strict scrutiny. If the freedom of speech itself can be so qualified, then surely the unenumerated right of localized travel can be as well.

*Id.*[7]

We, like the circuit court, agree with the logic of the *Lutz* court on this question. We therefore will subject West Bend's cruising ordinance to intermediate scrutiny, and we will uphold it if it is narrowly tailored to meet the city's objectives.

### 2. Application and Analysis

Applying the intermediate scrutiny test, we look to whether the ordinance is tailored and, if so, to what degree. Much of our discussion on this question will track what we have already said in response to the appellants' overbreadth challenge.

As we have noted, the ordinance is: (1) limited in its application to a designated area and a designated daily time span; (2) prescribes standards for determining whether a cruising violation has occurred; and (3) allows for an "on the scene" explanation by the suspect to the officer which, if accepted, will allow the citizen to be on his or her way. With these limitations built into

---

[7] Although it did not directly decide the question, the Wisconsin Supreme Court implicitly applied the intermediate scrutiny test to the curfew limitations imposed on the right to travel by the city of Milwaukee during the urban riots of 1967. *See Ervin v. State*, 41 Wis. 2d 194, 201–02, 163 N.W.2d 207, 211 (1968).

the ordinance, we conclude that the city has carefully narrowed the application of the ordinance to the safety and congestion problems identified by Chief Skidmore's affidavit and noted in the preamble to the ordinance.

We make a final and important observation. The city's cruising ordinance is not one which merely promotes a self-serving interest of government at the expense of the constitutional right of the people to freedom of movement. Rather, the purpose of the ordinance is to create a safer and less congested public street so that the general populace might more easily travel the area in question. Viewed from this perspective, it can be said that the ordinance *enhances rather than restricts* the constitutional right to travel.

We conclude that the appellants have failed in their burden to demonstrate that the city's cruising ordinance is unconstitutional.

## STATUTORY CHALLENGE

The appellants next argue that the cruising ordinance violates sec. 349.03, Stats., of the Motor Vehicle Code.[8] The statute provides in relevant part:

> **Regulation by local authorities forbidden; exceptions. (1)** Chapters 341 to 348 and 350 shall be uniform in operation throughout the state. No local authority may enact or enforce any traffic regulation unless such regulation:

---

[8] The appellants also cite to sec. 349.06, Stats., in support of this argument. This statute, however, pertains to local traffic regulations which legislate in areas already occupied by state law. State law does not prohibit cruising. Thus, sec. 349.06 does not pertain to this issue.

(a) Is not contrary to or inconsistent with chs. 341 to 348 and 350; or

(b) Is expressly authorized by ss. 349.06 to 349.25 or some other provision of the statutes.

(2) No local authority may enact or enforce any traffic regulation . . . in any manner excluding or prohibiting any motor vehicle . . . whose owner has complied with chs. 341 to 348 from the free use of all highways. . . .

Section 349.03.

In *City of Madison v. Reynolds*, 48 Wis. 2d 156, 180 N.W.2d 7 (1970), our supreme court used this statute to invalidate an ordinance which limited the use of a one-way street to only city buses and taxicabs. The court held that the statute did not permit such discrimination against the general public in the use of public thoroughfares. *Id.* at 160, 180 N.W.2d at 10. In the present case, however, the ordinance does not create such discrimination. All motorists are uniformly regulated by the ordinance. The ordinance here is not invalid under *Reynolds*.

In *City of Janesville v. Garthwaite*, 83 Wis. 2d 866, 266 N.W.2d 418 (1978), the supreme court held that an excessive noise ordinance, although a traffic regulation, did not violate sec. 349.03, Stats. The court reasoned that the ordinance was "consistent and not contrary with the specific provisions of the motor vehicle code." *Id.* at 871, 266 N.W.2d at 421. The court also stated that the city enacted the ordinance pursuant to the authority granted by sec. 62.11(5), Stats. *Garthwaite*, 83 Wis. 2d at 868–69, 266 N.W.2d at 420.

The same is true here. The cruising ordinance is not contrary to any specific provision of the vehicle code and its enactment represented a proper exercise of the city's statutory authority over its highways. Under *Garthwaite*, the ordinance is a proper exercise of the city's authority to regulate in traffic matters.

We reject the appellants' argument that the ordinance violates sec. 349.03, Stats.

*By the Court.*—Order affirmed.