**STATE of Minnesota, Respondent,**

**v.**

**Jason Edward STALLMAN, Appellant.**

**No. C6–93–2156.**

Court of Appeals of Minnesota.

July 26, 1994.

Carl J. Newquist, Newquist & Ekstrum, Chtd., Fridley, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Robert A. Hoard, Michael J. Scott, Jensen, Hicken, Gedde & Scott, P.A., Anoka City Prosecutor, Anoka, for respondent.

Considered and decided by RANDALL, P.J., and NORTON and KLAPHAKE, JJ.

## OPINION

RANDALL, Judge.

Appellant Jason Edward Stallman was convicted after a court trial of violating Anoka's "cruising" ordinance, Anoka, Minn., Code of Ordinances § 20–4.5 (1992). We reverse.

## FACTS

On May 6, 1993, at approximately 9:00 p.m., an officer of the Anoka police department selected a "traffic control point" within the city's "cruising zone" and began monitoring traffic at the intersection of Main Street and Branch in the City of Anoka. About 30 minutes later, the officer for the first time observed a red Mercury driven by appellant drive past this now established traffic control point. The officer observed the vehicle travel past him a total of four times within approximately ten minutes. The vehicle was stopped and appellant was issued a petty misdemeanor citation for "cruising" in violation of Anoka's city ordinance Section 20–4.5. Appellant challenged the legality and constitutionality of Anoka's cruising ordinance. After a bench trial, the trial court released an order finding the ordinance constitutional and appellant guilty.

In 1988, Anoka's cruising ordinance was passed in response to an increasing problem with car traffic and loitering on and around Main Street in Anoka. The Anoka police department claims it observed increases in fighting, underage drinking, vandalism, traffic violations, more serious criminal and drug trafficking, and argued that traffic congestion around Main Street was the cause. In addition, the police department claimed emergency vehicles had difficulty getting through the congestion, and had to use alternate, less direct routes to respond to emergency calls, delaying their response time.

Initially, Anoka's mayor appointed a task force to study the problem and recommend solutions. The first recommendation was to eliminate parking on Main Street between the hours of 10:00 p.m. and 2:00 a.m. This action decreased the number of pedestrians, but appeared to increase the cruising. The second recommendation was to barricade Main Street traffic, which only resulted in creating two cruising zones. Finally, the city enacted a cruising ordinance.

Under the first enactment of the ordinance, a warning had to be issued for the first violation. A second violation within six months could result in a citation. This ordi-

nance was ineffective, and costly for the city in terms of police overtime. In 1991, the city amended the ordinance, deleting the warning requirement.

Section 20–4.5 currently provides:

A. *Definitions*

  1. *Cruising* means the operation of a motor vehicle as defined in Minnesota Statutes 169.01, subd. 3, past a traffic control point three or more times, between the hours of 9:00 P.M. and 2:00 A.M. in a "No Cruising Zone."

  2. *Traffic Control Point* means any point or points within a "No Cruising Zone" where cruising is monitored.

  3. *No Cruising Zone* means any street, highway or area so designated by resolution of the Anoka City Council where cruising is prohibited and posted as such.

B. *Cruising Prohibited.* No person shall operate or permit a motor vehicle under his care, custody or control, to be driven in such a manner so as to constitute cruising.

C. *Penalties.* A violation of this section shall constitute a petty misdemeanor.

D. *Exceptions.* This section shall not apply to taxi cabs for hire, buses, authorized emergency vehicles, vehicles used under contract with the City of Anoka, or other vehicles being driven solely for business purposes while engaged in delivery services.

Large signs leading into Anoka state: "Cruising and Loitering Ordinances Are Enforced." On Main Street, signs say "No Cruising 9:00 p.m. to 2:00 a.m." The signs do not indicate the boundaries of the zone. The signs do not indicate that a "traffic control point" is any intersection or any other point the police select to set up temporary monitoring. The police department has the discretion to choose its own traffic control points, stay as little or as long as they want at those points, and then move on. The signs do not state that a driver can pass a traffic control point two or less times without any justification, and the signs do not state the limited exceptions set out in Section 20–4.5.

As established by the city council, the "No Cruising Zone" includes Main Street and one block on each side of Main Street, from a park at one end, to the Anoka city limits.

## ISSUES

1. Does Anoka's cruising ordinance violate state law?

2. Is Anoka's cruising ordinance unconstitutional?

## ANALYSIS

### I.

*Unreasonable regulation of traffic on a state highway by a municipality.*

Appellant first argues that Anoka's cruising ordinance conflicts with state traffic law and does not come under one of the enumerated six exceptions where a municipality may regulate driving activities in conflict with state law. *See* Minn.Stat. §§ 169.022 and 169.04 (1992). Appellant argues that because cruising is not one of the six exceptions, Anoka does not have the authority to regulate this area.

■ Respondent argues that state law does not regulate cruising behavior and it need not be listed as one of the six exceptions before a municipality can regulate it. Because of our analysis on the constitutional issue, we do not rest our decision on whether this ordinance conflicts or is in accord with State of Minnesota traffic control law. We agree, however, that it probably does not conflict with state law. Traffic regulations are governed by Minn.Stat. ch. 169 (1992). Statutory construction is a question of law subject to de novo review on appeal. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985).

■ Minn.Stat. § 169.022 provides:

The provisions of this chapter shall be applicable and uniform throughout this state and in all political subdivisions and municipalities therein, and no local authority shall enact or enforce any rule or regulation in conflict with the provisions of this chapter unless expressly authorized herein.

Local authorities may adopt traffic regulations which are not in conflict with the provisions of this chapter; provided, that when any local ordinance regulating traffic covers the same subject for which a penalty is provided for in this chapter, then the penalty provided for violation of said local ordinance shall be identical with the penalty provided for in this chapter for the same offense.

Minn.Stat. § 169.04 provides a list of six exceptions where a municipality may regulate driving activities in conflict with state law.

Appellant argues that because cruising is not one of the six exceptions, Anoka does not have the authority to regulate this area. This argument, however, ignores the language in Minn.Stat. § 169.022 which allows local authorities to "adopt traffic regulations which are not in conflict" with state law. State law does not regulate cruising behavior. Anoka's ordinance probably does not conflict with state law. *See Scheunemann v. City of West Bend,* 179 Wis.2d 469, 507 N.W.2d 163, 168 (App.1993) (rejecting the argument that a cruising ordinance violated Wisconsin state law because the ordinance was not contrary to any specific provision of the vehicle code), *pet. for rev. denied* 513 N.W.2d 406 (Wis.1993).

## II.

*Constitutionality and the void for vagueness test*

■■ Appellant also challenges the constitutionality of the ordinance. The constitutionality of a statute is a question of law reviewed de novo by an appellate court. *See Hibbing Educ. Ass'n,* 369 N.W.2d at 529. Where no fundamental right or suspect class is involved, the challenged statute or ordinance is presumed constitutional, and the challenger must prove it is unconstitutional beyond a reasonable doubt. *Essling v. Markman,* 335 N.W.2d 237, 239 (Minn.1983); *State v. Hyland,* 431 N.W.2d 868, 871 (Minn. App.1988).

Appellant claims the ordinance violates a fundamental right to intrastate travel. The United States Supreme Court has not ad-dressed the issue of whether the fundamental right to interstate travel includes the right to intrastate travel. A federal circuit court, however, found a fundamental right to intrastate travel under substantive due process in a case challenging a local cruising ordinance in York, Pennsylvania. *Lutz v. City of York,* 899 F.2d 255, 268 (3rd Cir.1990). The *Lutz* court applied an intermediate level of scrutiny to the cruising ordinance and found that the ordinance met that level of scrutiny:

> Not every governmental burden on fundamental rights must survive strict scrutiny, however. We believe that reviewing all infringements on the right to travel under strict scrutiny is just as inappropriate as applying no heightened scrutiny to any infringement on the right to travel not implicating the structural or federalism-based concerns of the more well-established precedents. For this conclusion, we rely heavily on the time, place and manner doctrine so firmly entrenched in the jurisprudence of free speech.

*Id.* at 269. Under intermediate scrutiny, the court stated it would uphold the ordinance "if it is narrowly tailored to meet significant city objectives." *Id.* at 270. The tailoring requirement does not require the least restrictive means, and does not require compelling state interests. *Id.* at 269. The court found significant government interests in "ensuring public safety and reducing the significant congestion caused by cruising." *Id.* at 270. More importantly, the court found the ordinance properly narrowly tailored to serve these interests because it was limited in scope to the area affected by the cruising, left open alternative routes to move around town without difficulty, and only prohibited repetitive driving in the area. The court emphasized that the ordinance did not have to be the least restrictive ordinance. *Id.*

The Wisconsin Court of Appeals had a similar case involving constitutional challenges to a cruising ordinance in *Scheunemann v. City of West Bend,* 179 Wis.2d 469, 507 N.W.2d 163 (App.1993), *pet. for rev. denied* 513 N.W.2d 406 (Wis.1993). We find *Scheunemann,* although not binding in Minnesota, particularly instructive because of its similarity to the ordinance at issue, and

the specificity with which it was drawn to pass constitutional muster. The *Scheunemann* ordinance prohibited driving past a certain point three times in a designated time, but required a showing of "a manner and under circumstances manifesting a 'purpose' of unnecessary, repetitive driving in such area." The driver's conduct must "demonstrate a specific intent to cruise." *The ordinance also allowed the driver to give an explanation that the driving was not unnecessary, but was for a lawful purpose. Id.* at 165 n. 2. The Wisconsin court adopted the reasoning of the *Lutz* court holding that there is a fundamental right to intrastate travel, and also applied the lesser or intermediate level of scrutiny to the ordinance. *Id.* at 167. The court found that the ordinance met this level of scrutiny. *Id.*

■ We agree with the reasoning of the *Lutz* and *Scheunemann* courts that any right to intrastate travel need only receive an intermediate level of scrutiny. Appellant urges on the court that the right to intrastate travel demands judicial review at a level of strict scrutiny. We disagree that "strict scrutiny" is mandated to review this lesser, but still important right. Nonetheless, under the intermediate level scrutiny, we still find for appellant.

An anti-cruising ordinance must be *narrowly tailored* to meet significant city objectives. Anoka may have significant city objectives in reducing traffic congestion, eliminating safety hazards, ensuring clear passage for emergency vehicles, and reducing the criminal activity Anoka claims accompanies cruising. Even applying an intermediate level of scrutiny, this ordinance is far from being narrowly and reasonably tailored. From the totality of the record, it is far too sweeping, and allows unimpeded and arbitrary decisionmaking by the police as to who to stop, and who to cite or let go. This sweeping breadth is unnecessary to attack Anoka's purported problem.

■ The problem Anoka police have identified is set out succinctly in respondent's brief:

The City of Anoka over the past several years has experienced a great increase in the number of motor vehicles that pass through the downtown business area, primarily during weekend evening hours. The problem that ensued is described by the Chief of the Anoka Police Department * * * in "Cruising and Loitering Problems Are Preludes to Serious Crime—One Community's Solution."

On a typical Saturday night between 400 and 500 teenagers milling about, provoking petty fights, traffic violations, underage drinking, and vandalism which escalated the serious physical/sexual assault and drug trafficking.

When we walk through the complained of conduct at which the cruising violation is aimed, the immediately observable undisputed fact is that fighting, traffic violations, drinking, vandalism, car assaults, sexual assault, and drug trafficking are *already* identified as violations of the Minnesota Criminal Code. Historically, the above described conduct is exactly the conduct that justifies law enforcement investigating, making arrests, prosecuting, and going on to sentencing after conviction. There is no hole in the Minnesota Criminal Code for this cruising ordinance to plug.

Further, in another part of the record, much is made of the problem of emergency vehicles being prevented from traveling through the most direct routes because of the claimed teenager traffic congestion. As appellant's attorney correctly points out, in addition to enforceable criminal law existing long before this ordinance was passed, the City of Anoka has an absolute right to regulate undesired driving conduct. The police can cite and/or arrest for speeding, careless driving, impeding traffic, illegal U-turns, noise violations, and can also utilize a specific law limiting interference with emergency vehicles. *See* Minn.Stat. § 169.20 (1992); *see also* Minn.Stat. § 169.15 (1992).

At oral argument, in response to a question from a member of the panel as to whether "traffic control points" were deliberately set up in front of hospitals and fire stations to ensure emergency vehicles and fire fighting equipment safe ingress and egress, respondent's attorney answered, "No." He went on to explain that the mere fact of a

908

public street being in front of a hospital or a fire station did not automatically qualify that street to be a traffic control point, even if it was within the broader no-cruising zone. He pointed out with candor that the location of the traffic control points was wherever an Anoka city policeman desired to set up during the pertinent time frame. He went on to explain that the officer could arbitrarily choose to be there for minutes to hours. He conceded that although one of the stated reasons for the ordinance was that emergency vehicles needed safe passage, nothing in the ordinance expressly or impliedly directed those areas to be traffic control points.

It is clear from the Anoka Police Department's statement of the problem that this ordinance is aimed at an "undesirable" class of people, namely teenagers who come to downtown Anoka to be there and, in the vernacular, "hang out." At oral argument, respondent's attorney readily conceded that the targeted group of teenagers was not so much comprised of residents of Anoka, but rather of young people from neighboring towns such as Minneapolis who drive through the area of Anoka's Main Street just to be there on weekend nights. We conclude that no matter how "undesirable" out-of-town teenagers may be, this ordinance sweeps too broadly, paints with too broad a brush, and, when studied line by line, lists conduct that laws on the books already control.

Again, the Wisconsin ordinance in *Scheunemann* is instructive. The Wisconsin ordinance is specific and requires circumstances manifesting a purpose of unnecessary and repetitive driving (cruising), such as horn blowing, hailing, arm waving, exiting and entering unrestricted road accesses. *See Scheunemann*, 507 N.W.2d at 165, n. 2. Most importantly, the West Bend ordinance allows drivers to offer a lawful explanation for why they passed the traffic control points three or more times. *Id.* at 167.

Anoka's ordinance, on the other hand, includes all legitimate conduct within its purview, subject only to those exceptions in section (d) which apply only to taxicabs for hire, buses, authorized emergency vehicles, City of Anoka vehicles, or other vehicles being driven *solely* for business purposes *while en-*

*gaged in delivery services.* Thus all legitimate business purposes, unless one is engaged in delivery services, can make the driver a lawbreaker. The examples are countless, but several will do to exemplify who is caught in the net of Anoka's cruising ordinance.

Between 9:00 p.m. and 2:00 a.m., a school teacher or maintenance worker drives home from the school through the no-cruising zone, and then back to the school because of more work, or because he or she forgot something, or for any other reason; the person then returns home through the zone in violation of the statute.

All downtown professionals, including but not limited to lawyers, insurance salespeople, realtors, engineers, accountants, who work after 9:00 p.m., upon leaving their office to go home through the no-cruising zone, and then returning to their office for any purpose, and then going home again through the zone would be in violation. Any person working downtown who drove home through the zone and then returned through the zone to go to a movie, visit a friend, pick up or drop off a babysitter, and then to drive home through the zone to return home would be in violation.

Under the exceptions listed in section (d), we cannot find an exception for a physician who, on emergency call, drives through the zone to make a house call, returns to his or her place of residence, and then within the five-hour time frame, because of a call from a spouse or a parent, returns to that same home and then goes back home again. That would constitute four trips, one over the limit. The physician, driving a private car and not an "authorized emergency vehicle" does not appear to fit into the list of exceptions. The term, "business purposes while engaged in delivery services," severely restricts the far broader term "business purposes" and refers to just a small fraction of people involved in business.

There are countless legitimate personal reasons as to why young people, middle age people, and the elderly may want to visit friends, children, grandparents or acquaintances and do some shopping, and because of

that would drive through the zone three times within a five hour period. Respondent's attorney argues that people with legitimate personal or business reasons could drive around the no-cruising zone. The more important issue is why should people with legitimate reasons to travel, driving appropriately and obeying all traffic laws, have to go out of their way to drive around downtown Anoka, when they are not the ones at whom the ordinance is aimed.

If this ordinance is applied uniformly, the citizens of Anoka will be stopped by police at a floating control point of which they have no specific knowledge, and when they explain their business or personal reasons for being in their car, will find they have broken the law. If they do not come under one of the limited exceptions, and the police fairly ticket all violators, the line at city hall to complain to the mayor and city council will become so long that coffee will have to be served, and much of the city's normal business will stop while people with legitimate reasons for car travel vent their spleens. The necessary result will be that officers will begin to accept reasonable explanations other than those on the limited exception list and allow those people to pass. The West Bend ordinance allows that, and thus avoids the problem of arbitrary enforcement, but the Anoka ordinance does not. Thus, in Anoka, if a member of the "undesirable" class states a legitimate business or personal reason to the officer, they will still be given a citation to discourage them from coming to Anoka again. The police will give all other "desirable" citizens safe passage.

Respondent argues that some of the ticketed drivers have not been teenagers. This argument is not persuasive. It is merely a fact which, by itself, proves nothing. The record does not show the residences of ticketed adults. The record does not show if they were visiting Anoka on personal business, for business purposes, or to drive up and down Main Street for no particular reason. That Anoka from time to time tickets people other than teenagers does not save an ordinance if the ordinance is invalid on its face.

We can sympathize with the City of Anoka's desire to regulate its streets. But, as stated elsewhere in this opinion, the present Minnesota Criminal Code adequately covers all four corners of every listed offense about which the City of Anoka has apprehension. Further, the ordinance at issue, compared to the problem at issue, bears no relation to the stated undesirable conduct Anoka wants to control.

Assume, for the sake of discussion, that a person is bent on conduct such as fighting, drinking, vandalism, traffic violations, assaults, or drug trafficking. That person can, with impunity, drive anywhere in Anoka's downtown area as long as they do it two or less times in front of a traffic control point. If the police move the traffic control point, and they are moved periodically, the driver can drive anywhere in the zone three or more times, or as many times as they wish if they happen to miss the traffic control points. Nothing about this cruising ordinance prohibits any of the complained of conduct. The driver, upon receiving a petty misdemeanor citation, cannot be jailed on the spot or run out of town. The driver can simply park his or her car and go on and do any of the above described criminal acts. If the driver does so, the cruising ordinance will be of no value. Laws already in force will be the solution.

Further, the cruising ordinance does not at all affect passengers. From the nature of the described problem, it can safely be assumed that not all drivers will be alone. Thus, even if a driver is stopped and given a citation, the passengers, if bent on mischief, will not be deterred by the cruising ordinance. They will only be deterred by laws already stated in our Criminal Code.

Enforcement of existing laws would appear to be Anoka's answer, not an indefinite law about indefinite conduct to which the average citizen, without going into city hall and studying the fine print, would have no notice. The term "cruising" is not a commonly understood term of art such as "Speeding Limit—35 mph" or "No U-turn." Those two terms, when posted on a sign, give a citizen an identifiable description of that which is prohibited.

What in fact does "cruising" or "no cruising" mean? Even if a citizen, from TV, newspapers, or movies, had an idea that it means driving one's car, how could one possibly know from the sign alone that it means driving your car three times or more past an unidentified check point between the hours of 9:00 p.m. and 2:00 a.m. It would be impossible for a citizen to know that unless the term was clearly spelled out, word for word and line by line. The limited exceptions could also not be known by the average citizen, even if highly educated, without a specific sign listing them. Laws must define what conduct is prohibited so that people can understand what conduct is prohibited. Also, the law must be written in a way that does not encourage arbitrary and discriminatory enforcement. *See State v. Newstrom,* 371 N.W.2d 525, 528 (Minn.1985); *see also Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983).

The ordinance is vague because drivers are not notified of the definition of cruising or of the location of the traffic control points. The posted signs neither identify the traffic control points nor the restriction against passing a control point three or more times. Even if one could find out where the no-cruising zone is located and, as a good citizen, try to avoid passing the traffic control points three or more times in the five-hour time span, ironically one cannot because the traffic control point could change. This procedure does not adequately inform the public of prohibited conduct. *See State v. Reha,* 483 N.W.2d 688, 692 (Minn.1992) (ordinance requiring dwelling to be kept clean and sanitary gives adequate notice of reasonable standard).

It is not our intention to suggest or prejudge what could be done to pass a constitutional cruising ordinance. But it is worthwhile noting the obvious. If Anoka, or any other city, has had demonstrated problems ensuring clear passage for emergency vehicles around hospitals, police stations and fire halls, we suggest a constitutional ordinance could be drafted that would specifically address that problem in those specific areas. The ordinance we have under review and its supporting documents simply mention the broad area of Main Street and one block on each side of Main Street from a park at one end to the Anoka city limits at the other. Unlike the West Bend ordinance, Anoka's ordinance does not provide an explanation of a lawful purpose or require an intent to cruise.

Put another way, if a town put a sign up outside its city limits that said, "Speeding on certain streets in the city limits is prohibited, but we will not tell you which streets or how fast is speeding, and you drive through our town at your peril," that would be a problem. The ordinance here is overly broad and catches within its net non-lawbreakers, and thus depends on the whim of the representative of the state to whom they explain their presence. *See People v. Bright,* 71 N.Y.2d 376, 526 N.Y.S.2d 66, 71, 520 N.E.2d 1355, 1359 (1988) (statute prohibiting loitering within transportation facilities with no requirement of intent to commit an unlawful act found to be unconstitutionally vague).

## DECISION

Anoka's cruising ordinance, which prohibits passing a floating traffic control point within a zone three or more times within a five hour period, with a range of exceptions too limited to allow for reasonable use of a city street, violates the fundamental right to travel and is unconstitutional on its face by reason of vagueness. Appellant's conviction under the ordinance is reversed.

**Reversed.**

KLAPHAKE, J., concurs specially.

KLAPHAKE, Judge (concurring specially).

I concur in the result.