Reuben ADAMS, Plaintiff-Appellant,†

v.

Phillip G. MACHT, Defendant-Respondent.

Court of Appeals

*No. 00–0782. Submitted on briefs October 13, 2000.—Decided December 27, 2000.*

## 2001 WI App 10

(Also reported in 623 N.W.2d 215.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the brief of *Reuben Adams*, pro se.

On behalf of the defendant-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Jody J. Schmelzer*, assistant attorney general.

Before Brown, P.J., Nettesheim and Snyder, JJ.

¶ 1. NETTESHEIM, J. Reuben Adams appeals from a circuit court order dismissing his complaint following the court's finding the Wisconsin Resource Center's (WRC) policy prohibiting former employees from visiting the institution to be reasonable and based on legitimate security concerns. The court's finding was in response to this court's earlier remand of the case for such a determination. In our earlier unpublished opinion, we held that WRC's enactment of such a policy was not prohibited by statute. *See Adams v. Macht*, No. 98–3643, unpublished slip op. (Wis. Ct. App. Sept. 29, 1999). Because the evidence in the

record established that the WRC's policy was reasonably related to legitimate security, rehabilitation and treatment concerns, we affirm the order of the circuit court.

## FACTS

¶ 2. The facts of this case are undisputed. Adams is a patient committed to the WRC pursuant to WIS. STAT. ch. 980 (1997–98).[1] Adams initiated this action against the director of the WRC, Phillip G. Macht, for declaratory and injunctive relief after the WRC instituted a policy prohibiting former employees from visiting the institution.[2] This policy had the effect of precluding visits from the mother of his child—a former employee of the WRC. Adams based his argument on the patients' rights section contained in WIS. STAT. ch. 51 that declares that patients shall "[b]e permitted to see visitors each day." WIS. STAT. § 51.61(1)(t). Adams moved for summary judgment and Macht moved for dismissal for failure to state a cause of action.

¶ 3. In its original decision, the circuit court dismissed Adams's complaint finding that while the statute allowed patients to have visitors every day, it did not preclude the institution from placing reasonable limits on who may visit. On appeal, this court upheld the circuit court's interpretation of the statute. However, giving Adams's pro se complaint a liberal construction, we discerned an additional issue that the circuit court did not address—Adams's claim that the application of the policy was arbitrary, unreasonable

[1] All references to the Wisconsin Statutes are to the 1997–98 version.

[2] Prior to commencing this action in the circuit court, Adams exhausted his administrative remedies.

31

and not based on a legitimate security concern. *See Adams*, slip op. at 2–3. We remanded for the circuit court to address this further issue, and it has done so.

¶ 4. In the current decision, the circuit court again dismissed Adams's complaint. The circuit court held that it could not substitute its judgment for that of the WRC administration as to the necessity of the policy. The circuit court relied on the affidavits of Macht and the security director of the WRC, Mario Canziani, to support the policy. Finding that there were legitimate security concerns involved, the circuit court concluded that the policy is not arbitrary or unreasonable, and represents a valid exercise of institutional authority. Adams again appeals.

## DISCUSSION

■

¶ 5. Because of our earlier opinion in this matter, the only remaining issue before us is whether the WRC's policy is "arbitrary and unreasonable and not based on a legitimate security concern." *Id.* at 3. As to the circuit court's holding, we review the policy de novo because the circuit court's decision upon remand was based entirely upon documentary evidence. *See Racine Educ. Ass'n v. Racine Bd. of Educ.*, 145 Wis. 2d 518, 521, 427 N.W.2d 414 (Ct. App. 1988) (no special deference to trial court findings when based on documentary evidence). But despite our de novo review, we value a trial court's decision on the matter at issue. *See Scheunemann v. City of West Bend*, 179 Wis. 2d 469, 475, 507 N.W.2d 163 (Ct. App. 1993).

¶ 6. But our standard of review of a governmental policy relating to the administration of the facility is a different matter. We begin by addressing the nature of the WRC facility and its residents. Persons civilly

committed under WIS. STAT. ch. 980 are patients, not prisoners, and the WRC is a treatment facility and not a prison.[3] That being said, we must recognize that administrators of ch. 980 treatment facilities face many of the same safety, environmental and rehabilitation concerns that confront administrators of prisons. For that reason, we will look to the case law dealing with challenges to prison regulations for assistance on this standard of review question.

¶ 7. In *Lomax v. Fiedler*, 204 Wis. 2d 196, 209, 554 N.W.2d 841 (Ct. App. 1996), this court adopted the "reasonably related" standard when reviewing prison-imposed restrictions on inmates' rights. We inquired whether the prison's actions were "reasonably related" to legitimate penological objectives. *See id*. In deciding upon this standard, *Lomax* relied upon the United States Supreme Court opinions in *Turner v. Safley*, 482 U.S. 78 (1987), and *Thornburgh v. Abbott*, 490 U.S. 401 (1989). *See Lomax*, 204 Wis. 2d at 201. Citing to those two cases, *Lomax* noted that while prisoners retain the benefit of their constitutional rights, such rights "must necessarily be limited by considerations relating to ' "the inordinately difficult undertaking" that is modern prison administration.' " *Lomax*, 204 Wis. 2d at 205 (quoting *Thornburgh*, 490 U.S. at 407 (citation omitted)). This is necessarily so because "[t]he legislature has delegated the task of running the state's prisons to the Department of Corrections, not to the courts." *Lomax*, 204 Wis. 2d at 205. The courts' sole function is "to determine whether the challenged actions strike a reasonable, constitutionally permissible, balance between the rights of prisoners and legitimate con-

[3] Macht states in his affidavit that the WRC is a secure treatment facility housing both Department of Corrections inmates and Division of Health and Family Services patients.

cerns of prison administration and security." *Id*. And such actions should only be overturned if "they are so remote from, and unconnected to, any legitimate correctional or penological interests as to be arbitrary or irrational." *Id*. at 222 (citing *Turner*, 482 U.S. at 89–90).

■

¶ 8. Because the safety, environmental and rehabilitation concerns in the prison setting are similar to those in a WIS. STAT. ch. 980 facility setting, we adopt the "reasonably related" standard for purposes of reviewing the policy at issue in this case. Thus, we look to whether the visitation restriction regulation is reasonably related to legitimate safety, rehabilitation and treatment objectives.

¶ 9. The WRC policy in question was instituted through an internal memorandum issued by Macht on October 22, 1997, to his deputy administrator for the division of care and treatment facilities. The memo cited violations of the WRC's policy prohibiting fraternization as the impetus for prohibiting former employees from visiting the institution. The memo also pointed to the risk posed by former employees due to their formal and informal knowledge of institution procedures—including security measures—and their ability to pass such information on to current patients. The memo further noted that the prohibition of visitation by former employees was in keeping with "accepted security practices of other institutions housing inmates and high risk patients deemed to be 'sexually violent predators.' " In noting that such visits were "counter-therapeutic," the memo went on to say:

> Patients committed to WRC have been found to be at substantial risk to commit additional acts of sex-

ual violence and manipulation. When staff are successfully manipulated and cross the boundaries, the patient is not without culpability. When an ex-staff person requests to visit, the patient and victim's distortions are reinforced. Treatment seeks to reduce reliance on distortions, and it is difficult to challenge such manipulative behavior when the institution consciously or unconsciously fails to actively address the constructs of continued psychopathic behavior by acquiescing to such visits.

¶ 10. In addition to Macht's memo, the record also contains affidavits from Macht and Canziani laying out the reasons for implementing the WRC's policy prohibiting visitation by former employees. Both affidavits begin by setting out each individual's expertise by indicating his length of service in corrections. Macht has worked in corrections since 1965, serving as the director of the WRC since 1986. Canziani has been the security director at the WRC since 1996 and has worked in corrections since 1991. In his affidavit, Macht notes that the primary goal of the WRC is "to provide the patients with treatment and to protect the public" and that "[a]ll decisions that affect patients are based on security, management and treatment."

¶ 11. In laying out the dangers presented by allowing former employees to visit the WRC, Canziani stated that visitation necessarily increases the WRC's exposure to contraband and other breaches of security. Echoing Macht's memo, Canziani also stated that former employees' knowledge of security procedures and any flaws therein creates a significant risk of escape or other safety problems. In addressing the issue of fraternization, Canziani reported that the effect of such problems is a blurring of the appropriate boundaries between staff, inmates and patients. Furthermore, in

concluding that such visitation poses a serious risk to institutional security, Canziani noted that "[p]eople in love or compromised in any other way frequently demonstrate poor judgment" and that "[p]ast corrections history nationwide has shown a number of these individuals have smuggled in contraband/weapons and assisted escapes." Canziani also stated that fraternization affects staff morale and, if left unchecked, diminishes the institution's ability to prevent future incidents. Finally, Canziani observed that compromised former employees may be able to influence their former coworkers who are still employed and that a general prohibition is necessary due to the difficulty in determining the nature of the relationship between the patient and the former employee.

¶ 12. Applying the facts of this case to these general principles, Canziani recited that: (1) the former employee involved was academy trained and well versed in the WRC's security practices; (2) the former employee has a child with Adams; (3) the former employee was terminated for suspected fraternization with an inmate at another institution; (4) the former employee admitted to sending Adams photocopied material from her training manual; and (5) security practices at the WRC have not changed since the former employee was trained. Thus, in Canziani's opinion, the former employee poses a "continuous threat [to the] security of the institution."

¶ 13. Remembering our deferential standard of review, this court is satisfied that the WRC's policy is reasonably related to legitimate security, rehabilitation and treatment concerns. *See Lomax*, 204 Wis. 2d at 201. The memo that instituted the policy and the affidavits of Macht and Canziani amply support our

conclusion. Thus, this is precisely the type of administrative decision in which courts should defer to the professional expertise of administrators of prisons or treatment facilities.

¶ 14. Before concluding, we note that in addition to his challenge to the validity of the rule, Adams makes a related argument that the blanket application of the WRC policy sweeps too broadly and should be applied only when the facts of a specific case dictate its imposition. However, even if the WRC's rule was limited and tailored in the fashion that Adams requests, we would nonetheless conclude that the rule was properly applied under the facts of this case because the relationship between Adams and the former employee threatens institutional security.

## CONCLUSION

¶ 15. Creation of a policy such as the one in question here is within the professional expertise of the WRC administrator, and we accord deference to that determination. And because the evidence establishes that the policy is reasonably related to the legitimate security, rehabilitation and treatment concerns of the WRC, we uphold the application of the rule to the institution as a whole and to Adams specifically.

*By the Court.*—Order affirmed.