STATE of Wisconsin, Plaintiff-Respondent,

v.

Thomas M. STOCKLAND, Defendant-Appellant.

Court of Appeals

*No. 02–2129–CR. Submitted on briefs May 8, 2003.—
Decided July 16, 2003.*

2003 WI App 177

(Also reported in 668 N.W.2d 810.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Ralph A. Kalal* of *Kalal & Associates*, Monona.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Christopher G. Wren*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Nettesheim, P.J., Brown and Anderson, JJ.

¶ 1. ANDERSON, J.   Thomas M. Stockland appeals from a judgment of conviction for operating a motor vehicle while intoxicated (OWI), fifth offense, contrary to WIS. STAT. §§ 346.63(1)(a) and 346.65(2)(e) (2001–02).[1] Stockland collaterally attacks[2] his second offense OWI conviction, arguing that it was obtained without a constitutionally valid waiver of the right to

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[2] "Collateral attack" is an attempt to avoid, evade or deny the force and effect of a judgment in an indirect manner and not in a direct proceeding prescribed by law and instituted for the purpose of vacating, reviewing or annulling it. *Zrimsek v. Am. Auto. Ins. Co.*, 8 Wis. 2d 1, 3, 98 N.W.2d 383 (1959). The general rule is stated as follows:

> A judgment rendered by a court having jurisdiction of the parties and the subject matter, unless reversed or annulled in some proper proceeding, is not open to contradiction or impeachment, in

counsel and that it therefore should not be constitutionally counted in terms of penalty enhancement. We do not reach the merits in this case because Stockland has failed to make a prima facie showing that he was denied his right to counsel. We therefore affirm.

### Facts

¶ 2. Stockland entered a no contest plea to a charge of OWI, with a minor passenger under the age of sixteen years, stipulating that he did, in fact, have four prior convictions counted as penalty enhancers under WIS. STAT. 343.307. However, Stockland contended that one of these prior convictions, a second offense OWI conviction occurring on January 30, 1995, could not properly be counted constitutionally because the conviction was obtained in violation of his Sixth Amendment right to counsel.

¶ 3. At a hearing on March 29, 2002, Stockland submitted to the court an eight-page transcript from his 1995 plea hearing, which is the basis for the challenged conviction. Stockland did not submit any other transcripts from this plea date. Stockland argued that the transcript proved that the court conducted an inadequate plea colloquy resulting in a violation of his right to counsel and, therefore, his second offense OWI conviction should not be counted against him for sentencing purposes. The relevant portion of the submitted transcript reads:

> THE CLERK:   94–CT-235, State of Wisconsin versus Thomas M. Stockland.

---

respect of its validity, verity, or binding effect, by parties or privies, in any collateral action or proceeding, except . . . for fraud in its procurement.

*Id.* (citation omitted).

552

MS. KRAUSE: The State appears by Assistant D.A. Heather Krause. The defendant appears in person without an attorney. Your Honor, I had a pre-trial conference with the defendant, and we have reached a plea agreement, as follows: With a guilty plea to the charge of OWI second, the State will move to merge and dismiss the charge of operating with a prohibited alcohol concentration. The defendant had a BAC of .13 at the time of the incident. The State is recommending the minimum penalties, which would be a fine of $300, plus court costs, for a total of $696; five days in the county jail; and revocation of his drivers license for 12 months.

THE COURT: Okay. You are Thomas Stockland; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Stockland, you have heard the statements of the Assistant District Attorney; is that correct?

THE DEFENDANT: Yes.

THE COURT: All right. Is that, in fact, the agreement that you have reached?

THE DEFENDANT: Yes.

THE COURT: And you are here without an attorney today. Is it your intent to proceed without a lawyer?

THE DEFENDANT: Yes.

THE COURT: What plea do you want to enter to the charge of drunken driving as a second offense within a five-year period?

. . . .

THE DEFENDANT: "Guilty."

MS. KRAUSE: Your Honor, I just inquired of the defendant whether he filled out a guilty plea questionnaire. He indicated that he did not have a chance to do that.

THE DEFENDANT: Okay. Sorry about that.

THE COURT: Okay. You have been in court all afternoon, Mr. Stockland?

THE DEFENDANT: Yes.

THE COURT: You have heard me ask people about their rights, and their understanding of their rights, and their waiver of their rights, all afternoon, have you not?

THE DEFENDANT: Yes.

THE COURT: Would you like me to repeat them for you at all?

THE DEFENDANT: No, that's all right. I understand.

THE COURT: Okay. And no one made any threats or promises to you, to encourage you to give up your rights, have they?

THE DEFENDANT: No.

THE COURT: Do you understand that at a jury trial, the State would have to prove your guilt beyond a reasonable doubt, before you could be found guilty?

THE DEFENDANT: Yes.

THE COURT: How far have you gone in school, Mr. Stockland?

THE DEFENDANT: Eleventh grade.

554

THE COURT: And have you consumed any alcohol or any other intoxicants in the last 24 hours?

THE DEFENDANT: No.

THE COURT: Okay. So, nobody had a Super Bowl party last night that you were attending then apparently?

THE DEFENDANT: I was sleeping.

THE COURT: Okay. If you wanted a lawyer, could you afford to hire one?

THE DEFENDANT: No.

THE COURT: Do you understand your right to have a Public Defender representation?

THE DEFENDANT: Yes.

THE COURT: Do you wish to waive that right also?

THE DEFENDANT: Sure.

THE COURT: Okay. I am satisfied that Mr. Stockland has freely, voluntarily, and intelligently waived his right to a trial, and a trial by jury. Likewise, he has entered his plea of "guilty" to the charge. Are the facts as reported here in the criminal complaint, Ms. Krause?

MS. KRAUSE: That's correct, your Honor. Also, your Honor, the defendant was arrested for OWI the first time on October ninth of 1993, and was sentenced and convicted of that on October 19th of 1993, making this a second violation within five years.

THE COURT: Okay. On the facts recited in the complaint, the Court will find the defendant guilty, and finds that it is a second such conviction within a

555

five-year period. Is there anything further from the State by way of a sentencing recommendation, Ms. Krause?

MS. KRAUSE: No, nothing further, your Honor.

THE COURT: Mr. Stockland, is there anything that you wish to tell the Court?

THE DEFENDANT: No.

¶ 4. As he does on appeal, Stockland argued to the circuit court that the above colloquy was deficient because it did not touch on whether he made a deliberate choice to proceed without counsel and it did not touch on whether he was aware of the disadvantages of self-representation.

¶ 5. The court pointed out to Stockland's attorney that this colloquy reveals that Stockland acknowledged that he was in court during the other proceedings that day when other defendants were advised of those rights and that he acknowledged hearing the other defendants being advised of those rights. The court then opined to Stockland's attorney:

> For whatever reason . . . you have elected not to request the court reporter to transcribe the transcripts of all of the other proceedings that Mr. Stockland listened to that afternoon, while he was in court. You have not presented any testimony from Mr. Stockland as to what he knew or didn't know.

¶ 6. Stockland's attorney admitted that he did not request the other transcripts but argued that "any statements that the Court might have made prior to Mr. Stockland's case being called, I don't think, quite candidly, any of that is relevant to the issue."

556

¶ 7. The State disagreed and argued that the partial transcript

> itself supports a finding that the waiver [of Stockland's right to counsel] was deliberate. Mr. Stockland was asked on two separate occasions whether or not he wanted . . . a public defender to be appointed on his behalf, because he didn't think he could afford an attorney, and he made that statement twice.
>
> And I do believe that the colloquy about the other cases that Mr. Stockland had watched earlier that evening, or on that day, does strike on whether or not the Court questioned him about his understanding of the difficulties of self-representation. And based on the fact that he was made aware of the penalties, and of the State's recommendation, that he waived his right to an attorney, and waived his right to a public defender.
>
> He stated that he was working at that time . . . and, presumably, he would have had some resources to hire an attorney. The fact that he sat through a number of different hearings, and had a discussion with the Court concerning his understanding of what had happened in the other hearings, concerning alcohol-type offenses, and the fact that he received the sentence for which he had bargained, supports that fact that there was a knowing and intelligent waiver of his right to counsel.
>
> If the Court is going to make a finding that [the defense] has met the initial burden, the State would be more than happy to pursue the other cases that were on the calendar on that date, and the particular discussions that were had on the record.

¶ 8. After this, the court determined that because a transcript of the other hearings had not been ordered, "we will have to set this hearing aside for a greater and more fully explored evidentiary hearing."

557

¶ 9. Two months later, on May 23, 2002, the subsequent hearing occurred. Stockland did not present any further evidence and simply restated his reliance on the previously submitted transcript to prove his prima facie case. The State responded by reiterating its argument as to why Stockland's request should be denied. The court then rendered its decision on the issue:

> [D]o you know what you failed to do [defense attorney]? I'm going to make some findings here. The Court finds that defense counsel has failed to provide a transcript of all of the court proceedings that were held earlier that afternoon when Mr. Stockland appeared, which he indicated he had listened to all afternoon, and that he understood his rights.
>
> By failing to provide these transcripts, the Court infers that they were not favorable to the position argued by the defendant, since the defense has the burden of going forward here. So, the Court is satisfied that somewhere in the earlier proceedings, that Mr. Stockland was advised of his rights, to which he made these acknowledgments that he understood his rights.
>
> Certainly, every time someone appears in traffic court, or at an initial appearance, the Court reads the statement of rights to all of those who appear, advising them of their right to be represented by counsel, and also advising them of their right to have counsel appointed, if they cannot afford counsel. Also in criminal traffic court cases, the Court does that. The Court does that for everyone when they appear, and the Court assumes that it did it for him.
>
> The reason you didn't provide those transcripts, since it seems to be a candor issue here, I assume that you would have those transcripts here . . . unless they wouldn't be helpful to you . . . .

. . . .

[D]efense counsel failed to get transcripts of all of the other hearings where Mr. Stockland was present when he was in court that afternoon. Mr. Stockland told the Court, and made a representation to the Court, and the Court assumes Mr. Stockland was an honest person.

He said that he understood all of his rights, that he heard them, and that he didn't want them repeated. The Court offered to repeat them, and go over them with him. He declined.

. . . .

[A]dditionally, Mr. Stockland received a copy of the criminal complaint in his prior case, and he certainly knew what the maximum penalties were, because he told us in this case that he can read and write the English language . . . .

So, taking a look at all of these things then, the Court would point out that the defendant made a plea bargain with the District Attorney's office for the minimum mandatory penalties. That is exactly what he got. He got what he bargained for. He got the minimum penalties.

. . . .

So, the motion is denied. The Court finds this is a fifth offense, and he is going to be sentenced on that.[3]

---

[3] We briefly note that the parties also dispute the second basis for the circuit court's ruling—judicial estoppel. The court pointed out that after Stockland's second conviction, he was convicted of third offense OWI and fourth offense OWI. The court noted that although Stockland was subject to the minimum mandatory penalties for those offenses, he did not challenge the validity of his second offense conviction in either of

¶ 10. Stockland was sentenced to five years probation with the condition that he spend one year in the county jail with work release privileges. Stockland appeals.

## Law and Discussion

¶ 11. In *State v. Hahn*, 2000 WI 118, 28–29, 238 Wis. 2d 889, 618 N.W.2d 528, the Wisconsin Supreme Court, citing to *Custis v. United States*, 511 U.S. 485 (1994), held that a defendant generally may not collaterally attack a prior conviction in a subsequent criminal case where the prior conviction enhances the subsequent sentence.

¶ 12. However, the *Hahn* court also noted the exception to the rule against collateral attacks: a collateral attack based upon an alleged violation of the defendant's right to counsel. *Hahn*, 238 Wis. 2d 889, 28–29. Stockland collaterally attacks his prior conviction under the right-to-counsel exception.

¶ 13. When "collaterally attacking" a prior conviction under this exception, the defendant has the initial burden of coming forward with evidence to make a

those proceedings. The court then found that Stockland is estopped from raising this challenge now because he acknowledged that his second conviction was valid in the third and fourth offense proceedings.

We do not address the estoppel issue because we can dispose of the case on other grounds. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983). However, we note that the supreme court in *State v. Peters*, 2001 WI 74, ¶ 4, 244 Wis. 2d 470, 628 N.W.2d 797, did not appear to be concerned by the issue of estoppel when it allowed the defendant, in the context of his prosecution for fifth offense OWI, to collaterally challenge his second OWI conviction because the no contest plea upon which it was based was entered without counsel.

prima facie showing of a deprivation of his or her constitutional right at the prior proceeding. *State v. Baker*, 169 Wis. 2d 49, 77, 485 N.W.2d 237 (1992). If the defendant makes a prima facie showing, "the state must overcome the presumption against waiver of counsel and prove that the defendant knowingly, voluntarily, and intelligently waived the right to counsel in the prior proceeding." *Id.* Whether a party has met its burden of establishing a prima facie case is a question of law that we decide de novo. *State v. Hansen*, 168 Wis. 2d 749, 755, 485 N.W.2d 74 (Ct. App. 1992). Nonetheless, we value the opinion of the circuit court, particularly where, as here, the court has provided a thorough and well-reasoned decision. *Scheunemann v. City of West Bend*, 179 Wis. 2d 469, 475–76, 507 N.W.2d 163 (Ct. App. 1993).

¶ 14. The validity of Stockland's waiver of counsel must be examined under the law prevailing at the time which was explained by the supreme court in *Pickens v. State*, 96 Wis. 2d 549, 563–64, 292 N.W.2d 601 (1980), *overruled by State v. Klessig*, 211 Wis. 2d 194, 564 N.W.2d 716 (1997):

> [I]n order for an accused's waiver of his right to counsel to be valid, the record must reflect not only his deliberate choice to proceed without counsel, but also his awareness of the difficulties and disadvantages of self-representation, the seriousness of the charge or charges he is facing and the general range of possible penalties that may be imposed if he is found guilty. Unless the record reveals the defendant's deliberate choice and his awareness of these facts, a knowing and voluntary waiver [of counsel] will not be found.

■

¶ 15. In addition to the law of *Pickens*, our review will keep in mind the reality that in high volume traffic

and misdemeanor courts it is common practice to give the recitation of constitutional rights at the start of proceedings and then incorporate that recitation by reference as each individual defendant's case is called. We approve of the circuit courts' employment of this efficiency measure.

■

¶ 16. Given the law under *Pickens*, our approval of the efficiency measure practiced in high volume traffic and misdemeanor courts and our examination of the record, we hold that Stockland failed to meet his prima facie burden because he has failed to provide, as he failed at the circuit court level to provide, all of the relevant transcript information on the issue. Stockland provided what amounts to a partial transcript because the transcript he provided picks up at the point his individual case was called. That partial transcript reveals that there is, in fact, other potentially available, relevant and important information as to whether Stockland was properly advised of the advantages and disadvantages of pro se representation under *Pickens*.

¶ 17. The partial transcript indicates that the circuit court delivered Stockland his rights "en masse" (i.e., explained to all the defendants assembled in the courtroom that day their rights), and included the drawbacks of waiving those rights. It further indicates that Stockland verbally acknowledged a receipt and understanding of those rights and, in the face of this understanding, it indicates that he chose to proceed without a lawyer.

¶ 18. Our approval of a circuit court's en masse delivery of rights is based not only on the need to promote the policy of efficiency but also on our determination that it is in compliance with the requirements of *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12

(1986).[4] Here, we are guided by our decision in *State v. Moederndorfer*, 141 Wis. 2d 823, 416 N.W.2d 627 (Ct. App. 1987).

[4] *State v. Bangert*, 131 Wis. 2d 246, 260–61, 389 N.W.2d 12 (1986), requires in pertinent part:

The Constitution sets forth the standard that a guilty or no contest plea must be affirmatively shown to be knowing, voluntary, and intelligent . . . .

We do not discard the mandatory requirement that trial judges undertake a personal colloquy with the defendant to ascertain his understanding of the nature of the charge, however. We merely determine that such communication is a statutory requirement, pursuant to sec. 971.08(1), Stats. That subsection reads:

"971.08 Pleas of guilty and no contest; withdrawal thereof. (1) Before the court accepts a plea of guilty or no contest, it shall:

"(a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted; and

"(b) Make such inquiry as satisfies it that the defendant in fact committed the crime charged."

We note that sec. 971.08 is modeled after the former Fed. R. Crim. Proc. 11. *See,* Comment to 1969 Wis. Laws 255. *McCarthy [v. United States*, 394 U.S. 459 (1969)] discussed Rule 11 as it existed at the time sec. 971.08 was enacted. The Supreme Court stated that Rule 11 "expressly directs the district judge to inquire whether a defendant . . . understands the nature of the charge against him and whether he is aware of the consequences of his plea." *McCarthy,* 394 U.S. at 464. Although sec. 971.08 is not a constitutional imperative, the procedure of the statute nevertheless is designed to assist the trial court in making the constitutionally required determination that a defendant's plea is voluntary. *Cf., id.* at 465.

Nor do we discard the general duties of the trial court prior to accepting a plea of guilty or no contest. Those duties are:

(1) To determine the extent of the defendant's education and general comprehension;

¶ 19. In *Moederndorfer*, the defendant was charged with, inter alia, aiding and abetting a burglary. *Id.* at 825. Pursuant to a plea bargain, he agreed to plead guilty to this charge; the State agreed to remain silent at sentencing. *Id.* Within fifteen minutes prior to the change of plea hearing, Moederndorfer completed a three-page document entitled "waiver of rights." *Id.* The court proceeding then took place, the plea bargain was placed on the record, the defendant pled guilty, and he was later sentenced. *Id.* at 825–26. Moederndorfer subsequently moved to withdraw his plea. *Id.* at 826. The circuit court ruled that while a prima facie case had been made by the defendant that he did not understand the constitutional rights he was waiving by pleading guilty, the State had met its burden of proving a knowing and voluntary waiver. *Id.* The circuit court also ruled that the defendant understood the nature of the charge against him and admitted the elements of the charge. *Id.* Further, the circuit court ruled that the prosecution did not breach the plea bargain agreement. *Id.*

---

(2) To establish the accused's understanding of the nature of the crime with which he is charged and the range of punishments which it carries;

(3) To ascertain whether any promises or threats have been made to him in connection with his appearance, his refusal of counsel, and his proposed plea of guilty;

(4) To alert the accused to the possibility that a lawyer may discover defenses or mitigating circumstances which would not be apparent to a layman such as the accused;

(5) To make sure that the defendant understands that if a pauper, counsel will be provided at no expense to him . . . and

(6) To personally ascertain whether a factual basis exists to support the plea. (Citations and footnotes omitted.)

¶ 20. The relevant issue in *Moederndorfer*, for our purposes, was whether the defendant understood he was giving up certain constitutional rights by pleading guilty. *See id.* In particular, the defendant faulted the circuit court's use of a waiver of rights form in lieu of a personal colloquy between the judge and the defendant. *Id.* After noting that Moederndorfer relied on *Bangert*, 131 Wis. 2d at 270, for the proposition that defense counsel may not speak for the defendant and that the defendant must be personally addressed to determine his or her understanding of the rights waived by a guilty plea, we held the following:

> Our reading of *Bangert,* however, is that the supreme court does not require the trial court to personally address the defendant regarding waiver of constitutional rights.

*Moederndorfer*, 141 Wis. 2d at 826. We emphasized the supreme court's language in *Bangert*, which sanctions a circuit court's colloquy if the colloquy demonstrates that the circuit court did

> specifically refer to some portion of the record or communication between defense counsel and defendant which affirmatively exhibits defendant's knowledge of the constitutional rights he will be waiving. The court must then . . . ascertain whether the defendant understands he will be waiving certain constitutional rights by virtue of his guilty or no contest plea. *Id.*, 131 Wis. 2d at 270–72, 389 N.W.2d at 24–25 (footnote and emphasis omitted).

*Moederndorfer*, 141 Wis. 2d at 827. We then stated:

> Personal colloquy by verbally following the provisions of SM-32 is not mandatory. *The trial court may instead refer to some portion of the record* or some communication between defense counsel and defendant. *Any one of*

*these alternatives is proper so long as the alternative used exhibits defendant's knowledge of the constitutional rights waived.*

*Id.* (emphasis added). Finally, we went on to approve the use of a written plea questionnaire as a means of fulfilling the mandatory plea colloquy. *Id.* at 827–28. Specifically, we approved of the process where

> [a] trial court . . . accurately assess[es] a defendant's understanding . . . by making a record . . . .
>
> The trial court made that kind of record in this case. The trial court personally questioned the defendant concerning the form. It asked the defendant if he had signed the form, if his attorney had assisted him in understanding the rights being waived and if he understood each of the paragraphs he had initialed. The defendant *replied affirmatively* to each question.

*Id.* at 828 (footnote omitted).

¶ 21.  The transcript Stockland submitted shows that like Moederndorfer, Stockland was asked if he understood his rights as they were presented to him—Moederndorfer's rights were presented via plea questionnaire and Stockland's were presented via en masse oral delivery. Like Moederndorfer, Stockland replied affirmatively to each of the circuit court's questions.

¶ 22.  Today, we take the logical step of adapting the *Moederndorfer* language to situations such as Stockland's where the court delivers rights to the defendant en masse. This reasoning flows from what we explicitly approved in *Moederndorfer*:  Those colloquys that "specifically refer to some portion of the record or communication between defense counsel and defendant which affirmatively exhibits defendant's knowledge of the constitutional rights he will be waiving." *Id.* at 827 (emphasis and citation omitted).

566

¶ 23. Here, the court specifically referred to some portion of the record it had made that day when it referenced its earlier en masse delivery of rights. Thus, just as the circuit court accurately assessed the defendant's understanding of the rights he would be waiving in *Moederndorfer*, the record implies that the circuit court accurately assessed Stockland's understanding of the rights he would be waiving.

■

¶ 24. There is compliance with *Bangert* as long as there is a record that the defendant was present when rights were given en masse and was personally questioned by the court to establish that he or she understood the rights, had no questions about the rights and waived the rights. Here, the court complied with *Bangert* when it made a record of Stockland's presence during the earlier en masse delivery of rights that same day and made a record of Stockland's verbal acknowledgement that he understood the rights he was waiving and he did not need any of these rights repeated.

¶ 25. However, we do not reach the ultimate question on the merits: whether, in its delivery of rights en masse, the circuit court failed to properly instruct Stockland on his right to counsel and the consequences of waiving this right. We cannot reach the merits because Stockland did not submit to the circuit court, nor did he submit on appeal, the relevant transcripts from the other proceedings held on January 30, 1995.

¶ 26. We agree with the circuit court that to make a prima facie case, Stockland needed to present all of the relevant transcripts from the January 30, 1995 plea date, beginning with the first transcript that dealt with delivery of rights through the transcript of his appearance. Stockland has failed to make a prima facie showing that he was denied his right to counsel because he

has not presented enough of the record to establish that the circuit court ignored mandatory procedures while delivering rights en masse. Furthermore, the circuit court's en masse delivery and subsequent personal colloquy with Stockland are typical of how rights are delivered in high volume traffic and misdemeanor courts. We approve of this practice because it allows such courts to function efficiently while still ensuring that defendants are informed of their rights.

*By the Court.*—Judgment affirmed.