STATE of Wisconsin, Plaintiff-Respondent,

v.

Kurt E. MOEDERNDORFER, Defendant-Appellant.

Court of Appeals

*No. 87–0269–CR. Submitted on briefs August 26, 1987.—*
*Decided October 7, 1987.*

(Also reported in 416 N.W.2d 627.)

824

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Daniel P. Murray* of *Love, Voss & Dreyfus,* of Waukesha.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Michael R. Klos,* assistant attorney general.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J.   All the issues in this case concern defendant's unsuccessful attempt to withdraw his guilty plea to burglary as a party to the crime. First, the defendant claims that the record fails to show his understanding of the constitutional rights he waived. This argument focuses upon the trial court's use of a "waiver of rights" form largely in lieu of a personal colloquy. Second, he claims that his understanding of the nature of the charge is refuted by his having denied an essential element of the crime. Third, is a claim that the prosecutor breached his promise that he would remain silent at sentencing. Defendant concludes that if this is error, it entitles him to withdraw his plea. We reject all of defendant's arguments and affirm.

Kurt E. Moederndorfer was charged with, *inter alia,* aiding and abetting a burglary. Pursuant to a plea bargain, he agreed to plead guilty to this charge; the state agreed to remain silent at sentencing.

Within fifteen minutes prior to the change of plea hearing, Moederndorfer completed a three-page document entitled "waiver of rights." The court proceeding then took place; the plea bargain was placed on the

record and the defendant pled guilty; he was later sentenced.

Moederndorfer subsequently moved to withdraw his plea. The trial court ruled that while a prima facie case had been made by the defendant that he did not understand the constitutional rights he was waiving by pleading guilty, the state had met its burden of proving a knowing and voluntary waiver. The trial court also ruled that the defendant understood the nature of the charge against him and admitted the elements of the charge. Further, the trial court ruled that the prosecution did not breach the plea bargain agreement.

The first issue is whether the defendant understood he was giving up certain constitutional rights by pleading guilty. In particular, the defendant faults the trial court's use of a "waiver of rights" form in lieu of personal colloquy between judge and defendant as envisioned in Wis J I—Criminal SM–32 (1985), Part V, Waiver of Constitutional Rights. The defendant appears to assert that the trial court is required to personally address the defendant and read each of the constitutional rights contained on the waiver form to confirm his understanding. He cites *State v. Bangert,* 131 Wis. 2d 246, 270, 389 N.W.2d 12, 24 (1986), for the proposition that defense counsel may not speak for the defendant and that the defendant must be personally addressed to determine his understanding of the rights waived by a guilty plea.

Our reading of *Bangert,* however, is that the supreme court does not require the trial court to personally address the defendant regarding waiver of constitutional rights. Rather, the supreme court wrote:

Henceforth, we will also require as a function of our supervisory powers that state courts at the plea hearing follow the provisions set forth in Wis J I—Criminal SM–32 (1985), Part V, Waiver of Constitutional Rights, *or specifically refer to some portion of the record or communication between defense counsel and defendant which affirmatively exhibits defendant's knowledge of the constitutional rights he will be waiving.* The court must then, as before, ascertain whether the defendant understands he will be waiving certain constitutional rights by virtue of his guilty or no contest plea. [Emphasis added.]

*Id.,* 131 Wis. 2d at 270–72, 389 N.W.2d at 24–25 (footnote omitted).

■ Personal colloquy by verbally following the provisions of SM–32 is not mandatory. The trial court may instead refer to some portion of the record or some communication between defense counsel and defendant. Any one of these alternatives is proper so long as the alternative used exhibits defendant's knowledge of the constitutional rights waived.

The three-page form used here details each constitutional right waived. The form directs the defendant to individually initial each paragraph explaining the particular constitutional right being waived if the paragraph is understood. This form became State's Exhibit Number 2 and was made part of the record. The trial court specifically referred to this portion of the record to show defendant's knowledge of the rights being waived.

The defendant appears to claim, however, that there is something inherently wrong about using a form—that its employment undermines the trial

827

court's ability to accurately assess the defendant's understanding of the rights being waived. We reject that notion.

People can learn as much from reading as listening, and often more. In fact, a defendant's ability to understand the rights being waived may be greater when he or she is given a written form to read in an unhurried atmosphere, as opposed to reliance upon oral colloquy in a supercharged courtroom setting. A trial court can accurately assess a defendant's understanding of what he or she has read by making a record that the defendant had sufficient time prior to the hearing to review the form, had an opportunity to discuss the form with counsel, had read each paragraph, and had understood each one.

The trial court made that kind of record in this case. The trial court personally questioned the defendant concerning the form. It asked the defendant if he had signed the form, if his attorney had assisted him in understanding the rights being waived and if he understood each of the paragraphs he had initialed. The defendant *replied affirmatively* to each question.[1]

---

[1]At the guilty plea hearing, the following exchange occurred between the trial court and the defendant:

> THE COURT: By entering that plea of guilty, Mr. Moederndorfer, you give up rights, and these rights have been detailed in this three-page waiver of rights form. Your attorney has filed this on your behalf. Have you read this three-page form? You will have to answer out loud, sir.
> THE DEFENDANT: Yes.
> THE COURT: Have you read it this morning?
> THE DEFENDANT: Yes.
> THE COURT: In fact, you have read it within the last 15 minutes, I understand?
> THE DEFENDANT: Yes, Your Honor.

We hold that there was no error.[2]

The defendant next claims that his understanding of the nature of the charge was negated by several statements he made at the plea hearing. During the hearing, the defendant initially told the trial court that his original intention was merely to give the

THE COURT: Do you understand what is in these three pages, Mr. Moederndorfer?

THE DEFENDANT: Yes.

THE COURT: Has Mr. Hickey assisted you in understanding what is in these three pages?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions of me as to what is in these three pages?

THE DEFENDANT: No.

THE COURT: Mr. Moederndorfer, is this your signature on Page 3 of this form?

THE DEFENDANT: Yes.

THE COURT: Are these your initials in the columns of each of these three pages?

THE DEFENDANT: That's correct.

THE COURT: And these initials signify that you have read each of the paragraphs and that you understand them before you placed your initials on them, is that correct?

THE DEFENDANT: Yes, Your Honor, on each and every one.

[2]The defendant also complains that the trial court failed to determine the extent of defendant's education and general comprehension, whether any threats or promises were made to him, whether there were any mitigating factors and whether defendant understood he had a right to counsel if he could not afford one. These complaints are meritless. Although the trial court did not address these considerations, we cannot deem the record to be prima facie defective unless defendant also alleges to the trial court that he had a comprehension problem or alleges that a threat was actually made. This he never did. *See State v. Bangert,* 131 Wis. 2d 246, 274, 389 N.W.2d 12, 26 (1986). Further, the record is replete with information about the promises made to him and the mitigating circumstances of the case.

other men a ride to the victim's house and wait for them. He denied he was a lookout or in any way meant to participate in the burglary. In fact, he claims that he was told the entry into the building was with the consent of the owner. He concludes that he denied the elements of nonconsent and entry with intent to steal.

Our examination of the record reveals substantial colloquy by the trial court following defendant's statement. The trial court was obviously concerned that the defendant might not be admitting to each element of the crime, so it conducted further inquiry. Upon questioning by the trial court, the defendant admitted that he went into the home, that he took $1300 without the consent of the owner and that he intended to keep the money. Defendant concluded the colloquy by admitting that indeed he had participated in the burglary as a party to the crime. We find no error.

When the supreme court in *Bangert* established a procedure for evaluating challenges to the voluntary and knowing basis for a guilty plea, it placed the initial burden on the defendant to make a prima facie showing that his plea was accepted without compliance with sec. 971.08, Stats., or other mandated procedures set out in the *Bangert* opinion. *Bangert,* 131 Wis. 2d at 274, 389 N.W.2d at 26. Where a prima facie showing is made, and where the defendant alleges he did not know or understand the information which should have been produced at the plea hearing, the burden shifts to the state to show by clear and convincing evidence that the plea was knowingly and voluntarily entered. *Id.*

The trial court here ruled that the defendant had met his initial burden and shifted the burden to the state to produce additional evidence demonstrating the validity of the plea. The state takes issue with this finding and asserts that the trial court's ruling was based on caution and not a considered decision that the guilty plea colloquy was inadequate.

We agree that the burden of an evidentiary hearing should not be placed upon the state unless the trial court is first convinced, from examination of the plea hearing record alone, that the defendant has made a prima facie showing of a defective record. *See id.*

However, the hearing in which the trial court ruled that a prima facie case was made has not been made part of the appellate record. When the appellate record is incomplete, we may assume that the trial court made the missing finding on an issue in favor of or in support of the judgment. *See J.F. Ahern Co. v. Wisconsin State Bldg. Comm'n,* 114 Wis. 2d 69, 85, 336 N.W.2d 679, 687 (Ct. App. 1983). In this case, therefore, we will assume that the trial court did review the plea hearing record and, based upon that review, did find that the record was prima facie defective.

Even so, whether a party has met its burden of proof is a question of law which this court may examine without giving deference to the trial court's conclusion. *Burg v. Miniature Precision Components, Inc.,* 111 Wis. 2d 1, 12, 330 N.W.2d 192, 198 (1983). We therefore review the determination of whether the defendant made a prima facie showing *de novo.*

In this case, upon review of the plea hearing record, we hold that the defendant did not meet his prima facie burden of showing that the plea hearing record was defective. The record affirmatively demon-

strates that the defendant understood the constitutional rights he waived and understood the nature of the charge of burglary when he entered the plea of guilty.

Last, defendant claims that the prosecutor breached his plea agreement to remain silent at sentencing. At sentencing, a co-defendant testified, either intentionally or inadvertently, that he had been given two years' probation for burglary. The prosecutor merely provided the trial court with the accurate information—that the co-defendant's charge was reduced to misdemeanor in return for his testimony against the defendant.

This issue is controlled by *State v. Jorgensen*, 137 Wis. 2d 163, 404 N.W.2d 66 (Ct. App. 1987). This court ruled that an agreement for the prosecution's silence at sentencing is not violated when the prosecutor merely corrects inaccurate information given to the trial court. Such is the case here. *Id.*, 137 Wis. 2d at 169–70, 404 N.W.2d at 68–69.

The defendant argues that when the state breaches a plea agreement, the remedy is withdrawal of a plea. He is wrong. In *State v. Poole*, 131 Wis. 2d 359, 389 N.W.2d 40 (Ct. App. 1986), this court ruled that the appropriate remedy for the state's breach of its agreement is resentencing. *Id.*, 131 Wis. 2d at 365, 389 N.W.2d at 43. So, even had defendant been correct in asserting that the state breached its agreement here, the remedy would not be to allow a plea withdrawal.

*By the Court.*—Judgments and order affirmed.