STATE of Wisconsin, Plaintiff-Respondent,

v.

Michael BRANDT, Defendant-Appellant.†

Court of Appeals

*No. 97–1489–CR. Submitted on briefs March 30, 1998.——Decided May 13, 1998.*

(Also reported in 582 N.W.2d 433.)

†Petition to review granted.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michael J. Fitzgerald* of *Fitzgerald & Strang, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney

general, and *Stephen W. Kleinmaier* assistant attorney general.

Before Snyder, P.J., Brown and Nettesheim, JJ.

BROWN, J. In this case, Michael Brandt was provided with information concerning each element of each crime he was pleading to from two different sources: a plea questionnaire prepared by his attorney prior to his pleading guilty and the plea hearing where the trial court summarized the elements of each crime. The problem was that while the court correctly summarized the elements of each crime, the plea questionnaire had an attachment by Brandt's attorney with the wrong jury instructions containing the wrong charges with the wrong elements. Brandt claims this discrepancy shows that he did not properly understand the elements of each crime to which he pled. But the colloquy between Brandt and the trial court demonstrates that Brandt understood the correct nature of the charges against him and the proper elements of each charge. There was no indication that he misunderstood the content of the dialogue between him and the court, no claim that there was contrary information provided to him by his attorney and nothing to show reliance by him upon the information provided by his attorney. Only after sentencing has he made this claim. And the affidavits supporting his postconviction claim do not refute the trial court's conclusion that Brandt understood the nature of the charges based upon the personal colloquy conducted by the court. We reject Brandt's argument and affirm.

The facts are not in dispute. In March 1994, the State filed a five-count criminal complaint against Brandt charging him with forgery, theft by fraud and

uttering. In July 1996, Brandt entered into a plea agreement in which he agreed to plead guilty to counts involving forging a loan application, uttering and theft by fraud contrary to §§ 943.38(1)(a) and (2), and 943.20(1)(d), STATS. Two other counts would be dismissed and read in at sentencing. Under the plea agreement, the State retained a free hand to make any recommendation at sentencing.

Prior to the plea hearing, Brandt's attorney prepared a standard plea questionnaire which he read to Brandt and Brandt then signed. Brandt also signed an attachment to the questionnaire listing the elements for each crime he was pleading guilty to as a result of the plea bargain. This information was inaccurate. Brandt was pleading to a count involving forging information on a loan application, but the plea questionnaire listed the elements for false execution of a check.[1] Also, Brandt agreed to plead to theft by fraud, but the elements listed in the plea questionnaire were for theft by one having an interest in property from one with a superior interest. Finally, Brandt agreed to plead to the count of uttering a forged check, but the plea questionnaire listed the elements for possession of a forged check with intent to utter.

Because his attorney had another trial to attend, Brandt was represented at the plea hearing by the attorney's law partner. This attorney informed the court that a plea questionnaire had been prepared, and the court asked Brandt if he had read and understood the plea questionnaire before he signed it. Brandt responded, "Yes, Your Honor."

---

[1] Count three of the criminal complaint did charge Brandt with false execution of a check. That count was dismissed, however, as a result of the plea agreement.

The court then asked Brandt if he understood that it could sentence him to the maximum penalty for each count, to which Brandt responded that he did.[2] The court next discussed the nature and elements of the crimes with Brandt. We think it is important to document a pertinent portion of the colloquy, both to illustrate its thoroughness and to show how little reliance the court placed upon the plea questionnaire.

> THE COURT: You understand that by pleading guilty to Count One, forgery, you are admitting you committed each of the elements of that crime, which are as follows.
> First, that the document in the case was a writing by which legal rights or obligations are created or transferred.
> Second, that the writing was an application for a loan. Also, that you falsely wrote the name of Bruce Baca on the application for the loan.
> And, finally, that you falsely made the writing with the intent to defraud. Do you understand that you, by pleading guilty, you are admitting you committed all the elements of that crime?
>
> [BRANDT]: Yes, Your Honor.
>
> THE COURT: As to Count Two, theft by fraud, by pleading guilty, you are admitting you committed all the elements of that crime, which are as follows.
> First, you made a false representation to Bruce Schaal, [and] the First Financial Bank.
> Second, that you knew that such representation was false.

[2] The court also asked Brandt if he had been threatened or promised anything in exchange for his pleas, whether he was being treated for mental illness, or if he was under the influence of drugs or alcohol. Brandt gave negative responses to these questions.

Third, that you made such representation with the intent to deceive or defraud Bruce Schaal [of] First Financial Bank, and the First Financial Bank.

Next, that you retained title to property of the First Financial Bank by such false representation.

And, finally, that First Financial Bank was deceived by such representation.

Also, that First Financial Bank was defrauded by such representation. Do you understand you are admitting you committed all the elements of that crime?

[BRANDT]: Yes, Your Honor.

THE COURT: You understand that by pleading guilty to the crime of uttering, Count Five, you are admitting you committed all the elements of that crime, which are as follows.

First, that the writing was one by which legal rights or obligations are created or transferred.

Second, that the writing was falsely made.

Third, that you uttered the writing as genuine.

And, fourth, that you knew that the writing was falsely made. Do you understand that you are admitting you are committing all the elements of that crime?

[BRANDT]: . Yes, Your Honor.

The court then explained to Brandt each of his constitutional rights in a criminal trial and asked him if he understood that he waived those rights with his guilty pleas. Brandt responded that he understood the rights he was waiving. When the court asked Brandt if he had enough time to talk with his attorney, Brandt responded that he did. The court then asked Brandt if he had any questions about the plea questionnaire or his pleas of guilty, to which Brandt answered, "No, Your Honor."

In response to questions from the court, the attorney appearing on Brandt's behalf said that he had ample opportunity to confer with Brandt and that he reviewed the plea questionnaire with him. He also stipulated that the complaint provided a factual basis for the pleas and that Brandt understood the charges, the elements of the charges and the consequences of a finding of guilt. Finally, the attorney said he was satisfied that Brandt knowingly and intelligently waived his constitutional rights.

Brandt then informed the court that he was satisfied with the representation he had received from his lawyer. Finally, the court asked Brandt the following questions:

> THE COURT: Is there anything you wish to disagree with or ask questions about?
>
> [BRANDT]: No, Your Honor.
>
> THE COURT: Is there anything I may have asked you that you now, upon reflection, wish to modify or change in any way?
>
> [BRANDT]: No, Your Honor.
>
> THE COURT: Do you wish the court to accept your pleas of guilty at this time?
>
> [BRANDT]: Yes, Your Honor.

The court then found that Brandt's guilty pleas were freely, voluntarily and intelligently made and accepted Brandt's pleas. The trial court subsequently sentenced Brandt to ten years in prison, imposed and stayed a consecutive seven-year prison term, placed him on probation for ten years consecutive to the prison term and imposed a $7500 fine.

In April 1997, Brandt filed a motion to withdraw his guilty pleas, claiming that he was not adequately advised of the elements of the offenses to which he pled guilty. Brandt conceded that the trial court accurately advised him of the elements of the crimes charged and that he replied in the affirmative when asked if he understood the elements of the crimes to which he was pleading guilty. He contended, however, that he should be allowed to withdraw his guilty pleas because the court did not closely examine the plea questionnaire (and therefore notice that the elements listed in the plea questionnaire were incorrect) prior to accepting his guilty pleas.

To support this motion, Brandt submitted affidavits from himself, his attorney and his attorney's partner. His attorney averred in his affidavit that he prepared the plea questionnaire, that the elements were incorrect and that he never discussed the elements of the offenses with Brandt prior to preparing the attachment to the plea questionnaire. His attorney's partner, contrary to his statements made in open court, averred that he had not read or discussed the plea questionnaire with Brandt. He also averred that he never realized how the elements read by the court were different than those listed in the plea questionnaire. Brandt averred that he did not pay close attention to what the court said to him and that he did not realize there was a difference between the elements listed in the plea questionnaire and those listed by the court. He claims he simply went through the motions at the plea hearing because that is what his attorney told him to do and that he did not raise any questions about the process because he believed the plea questionnaire to be accurate.

The trial court denied Brandt's motion. The court decided that the inaccurate plea questionnaire was inconsequential, stating: "[I]t is important to note that the Court did not, in its oral colloquy with [Brandt], as to the elements indicate or ask the defendant whether he understood . . . that he was pleading guilty to a crime with the elements that were listed in the plea questionnaire . . . ." The trial court concluded that it did not have a "burden to closely peruse any handwritten attachment to the plea questionnaire" *because* it had personally summarized the nature and elements of the crimes for Brandt. The court said, due to the personal colloquy between it and Brandt, "the defendant understood the nature of the crimes charged." Brandt appeals.

■

In *State v. Bangert,* 131 Wis. 2d 246, 389 N.W.2d 12 (1986), our supreme court set forth the procedures to follow when a defendant claims not to have understood the elements of the crime to which he or she pled. Initially, a defendant has the burden to make a prima facie showing that his or her plea was accepted in violation of § 971.08, STATS., or other mandatory procedures. *See Bangert,* 131 Wis. 2d at 274, 389 N.W.2d at 26. Also, the defendant must allege that "he [or she] in fact did not know or understand the information which should have been provided at the plea hearing." *Id.*

■

If the defendant meets these criteria "the burden will then shift to the state to show by clear and convincing evidence that the defendant's plea was knowingly, voluntarily and intelligently entered, despite the inadequacy of the record at the time of the plea's acceptance." *Id.* Whether the defendant made the initial prima facie showing that the trial court accepted

the plea in violation of § 971.08, STATS., or other mandatory procedures is a question of law which we review de novo. *See State v. Hansen,* 168 Wis. 2d 749, 755, 485 N.W.2d 74, 77 (Ct. App. 1992).

As we stated above, Brandt acknowledges that the trial court correctly informed him of the elements for each count before he entered his guilty plea. Nonetheless, Brandt contends that because the plea questionnaire was inaccurate, he has made a prima facie showing that he could not have understood the elements of the crimes when the court accepted his pleas. In reality, Brandt is arguing for a bright-line rule that a prima facie violation of § 971.08, STATS., occurs whenever a trial court refers to a plea questionnaire at the plea hearing, no matter how little reliance is placed upon that questionnaire, and the questionnaire is subsequently shown to be inaccurate. We disagree.

■

A plea is voluntary in the constitutional sense if the defendant receives adequate notice of the true nature of the charge against him or her. *See Henderson v. Morgan,* 426 U.S. 637, 645 n.13 (1976). As a result, courts have a mandatory duty under § 971.08, STATS., to evaluate whether a defendant understands the charges and the potential punishment prior to accepting a guilty plea. *See Bangert,* 131 Wis. 2d at 260, 389 N.W.2d at 20. The trial court can accomplish this in any one of three ways: (1) by personally summarizing the elements for the defendant; (2) by asking defense counsel whether he or she explained the elements of the crime to the defendant; or (3) by "expressly refer[ring] to the record or other evidence of defendant's knowledge of the nature of the ˙ charge

131

established prior to the plea hearing." *Id.* at 268, 389 N.W.2d at 23.

Thus, the key question this court must ask when reviewing the plea hearing record is whether the defendant received adequate notice of the charge, i.e., was the defendant's plea "made voluntarily with understanding of the nature of the charge and the potential punishment if convicted." Section 971.08(1)(a), STATS. *Bangert* tells us the answer to that question depends on the steps the trial court took to determine whether the defendant's plea was voluntarily, knowingly and intelligently entered. *See Bangert,* 131 Wis. 2d at 268, 389 N.W.2d at 23. Therefore, if a plea questionnaire contains inaccurate information, the question is not simply whether the trial court referred to the questionnaire. Instead, the pivotal issue a reviewing court must examine is to what extent did the defendant and the trial court rely upon the plea questionnaire during the colloquy between them to determine whether the defendant understood the nature and elements of the charge and the potential punishment prior to accepting the plea.

With this in mind, we turn to the case at bar. Initially, we observe that the trial court referred to the plea questionnaire a total of three times during the course of the plea hearing. First, it asked Brandt if he signed a plea questionnaire and waiver of rights form and whether he understood the questionnaire before he signed it. Brandt told the court that he did. In addition, just before it accepted his pleas the court asked Brandt if he had any questions about the plea questionnaire. Brandt said that he did not. The court then asked the attorney appearing with Brandt if he had reviewed the questionnaire and waiver of rights form with Brandt.

That attorney, an officer of the court, responded that he had.

Mere references to the plea questionnaire are not enough for this court to be satisfied that the questionnaire was in fact *used* by the trial court and *relied upon* by the defendant as the focal point for the defendant's understanding of the elements of the crimes being pled to. Brandt must show more; he must show that the trial court and the defendant were together relying upon the information contained in the questionnaire as evidence of the source of the defendant's knowledge and understanding of the nature of the crimes. He cannot do so in the present case. In fact, the record clearly shows how the trial court chose to rely entirely on its own personal colloquy with Brandt to determine whether his pleas were voluntary, knowing and understanding. Further, the record shows that Brandt was not relying at all upon the plea questionnaire as a source for his answers to the court's questions. Rather, the record shows a personal dialogue going on between two people—a judge and a defendant. The record further shows an exchange of understandings on the part of both individuals as a result of the personal communication. We take particular note of the word "colloquy" as coined by our supreme court in *Bangert*. Webster's defines the word as "conversation," "dialogue," "a high level serious discussion," "conference." WEBSTER'S COLLEGIATE DICTIONARY 226 (10th ed. 1997). Simply because a straightforward question is asked by the court about whether the defendant understands what the court is saying and the defendant answers "yes" does not mean that the question-and-answer format is not a dialogue. What is essential in a dialogue is that it is a two-way street where the subject matter is clear and there is ongoing communication between persons. The record

133

shows that whatever information Brandt might have been given by his attorney, he understood what the trial judge was telling him.

The court explained the maximum penalty for each crime to Brandt and it explained to him that it was free to impose the maximum sentence for each count. Then, for each count, the trial court personally summarized the elements of the crime as they applied to the facts of the case and then asked Brandt if he understood that by pleading guilty he admitted to committing each element of the charge. Further, the trial court personally summarized for Brandt his constitutional rights in a criminal case and for each constitutional right it asked Brandt if he understood that by pleading guilty he was waiving that right. Throughout this colloquy, Brandt indicated that he understood the nature and elements of the crimes and the rights he was waiving by pleading guilty. In fact, the trial court repeatedly asked Brandt if he had any questions, if he wanted to change any of his answers or if there was anything he wished to disagree with prior to entering his pleas. Each time, Brandt responded, "No, Your Honor." The trial court also asked Brandt if he was satisfied with the representation he received from his lawyer, and Brandt said that he was.

 Based on this record, we conclude that the trial court conducted a proper and complete plea hearing to determine whether Brandt understood the nature of the charges against him prior to accepting his pleas. The record clearly shows how the trial court meticulously explained the nature and elements of the crimes to Brandt. More importantly, at no point did it rely upon the plea questionnaire as evidence of Brandt's knowledge or understanding of the plea hearing pro-

cess. Also, Brandt repeatedly told the court that he fully understood the nature and elements of the charges and of the consequences of pleading guilty; he never indicated that he was confused or had any questions about the plea process, even though he was given numerous opportunities to do so. If Brandt was in fact confused, he should have brought it to the attention of the court. He did not, and he cannot now claim he should be able to withdraw his pleas because he was not paying attention in court.

Not only does the plea hearing record show reliance by Brandt upon the personal colloquy with the court as being the basis for his understanding of the elements of each crime, the affidavits supplied by him show that neither the consultation with his attorney nor the plea questionnaire form itself played any significant role in determining his understanding of the charges. Brandt's principal attorney stated in his affidavit that he reviewed the plea questionnaire with Brandt for about one-half hour on the day of the plea hearing. This was the only time they discussed the elements of the offenses covered by the plea agreement. While it is evident from reading the affidavit that the attorney did discuss the elements during this half hour, the attorney did not state how much time was devoted to discussing the elements, as opposed to other information contained elsewhere on the form or information about the effect of the form upon the plea bargain process. At that time, the attorney told Brandt that he would not be able to attend the plea hearing because of a prior commitment. In Brandt's own affidavit, he stated that he and his attorney "went through a plea form very quickly." The only other affidavit was from the law partner who accompanied Brandt to the plea hearing. That attorney averred that he was "not

familiar" with the case, was simply "there to fill in" for his partner and did not read the questionnaire prior to the plea hearing. Brandt's affidavit states his concurrence that no conversations concerning the plea questionnaire took place between Brandt and the law partner.

This record establishes that the consultation about the plea questionnaire between Brandt and his attorney was perfunctory and contributed little or nothing to Brandt's understanding of the charges covered by the plea agreement. Thus, we are left with the trial court's thorough and detailed plea colloquy which fully satisfied *Bangert* and § 971.08(1), STATS.

We stress, however, that we would be confronted with a different case if the trial court had relied to a great degree upon the plea questionnaire during the plea hearing process, as some trial judges choose to do. While the *Bangert* case explicitly authorizes trial judges to make this choice, and while *Moederndorfer*[3] allows trial courts to rely upon plea questionnaires, this avenue is fraught with the danger that the plea questionnaire may contain inaccurate information. Therefore, we advise those judges who rely upon the plea questionnaires to undertake the duty of scrutinizing the plea questionnaires and any attachments to the questionnaires before relying upon them.

*By the Court.*—Judgment and order affirmed.

■

[3] *State v. Moederndorfer,* 141 Wis. 2d 823, 416 N.W.2d 627 (Ct. App. 1987).