State of Wisconsin, Plaintiff-Respondent,
v.
Michael J. McClelland, Defendant-Appellant.
No. 03-2225-CR.
Court of Appeals of Wisconsin.
Opinion Filed: April 13, 2004.
¶1. CURLEY, J.[1]
Michael McClelland appeals the judgment convicting him of disorderly conduct as a habitual criminal, contrary to Wis. Stat. §§ 947.01 and 939.62 (2001-02), and the order denying his postconviction motion.[2] McClelland contends that: (1) the trial court erroneously exercised its discretion in denying his motion to withdraw his guilty plea because his plea was not knowingly, voluntarily, and intelligently entered; and (2) the State failed to prove the underpinnings for the charge of habitual criminality. Because McClelland's plea colloquy was flawed, thus necessitating a hearing at which the State failed to meet its burden of proof, this court reverses and remands to the trial court to allow the defendant to withdraw his plea.

I. Background.
¶2. McClelland was charged with misdemeanor battery as a habitual criminal after he and his former girlfriend had an altercation at a bus stop over the amount of time that McClelland had kept their child. The complaint alleged that McClelland's girlfriend, Geraldine Childs, accosted him at a bus stop and complained that he had kept their child "for way too long." The argument continued and, as they began to walk southbound, McClelland said: "Bitch, this is my mother fucking child too." He then struck Childs in the chin with a closed fist. Childs then punched McClelland in the face, causing a laceration that required his hospitalization. Once at the hospital, McClelland was uncooperative and combative.
¶3. McClelland pled not guilty and a jury trial was scheduled. On the trial date, when the victim failed to appear, the State moved to amend the charge of battery as a habitual criminal to disorderly conduct as a habitual criminal. The trial court granted the motion over the objection of McClelland's attorney. McClelland was not present in the courtroom during the motion. Shortly thereafter, McClelland appeared in court and pled guilty to disorderly conduct as a habitual criminal.
¶4. The guilty plea hearing was not lengthy. At the hearing, McClelland acknowledged that he signed a guilty plea questionnaire. That questionnaire referred to the charge as "DC/Habitual," with the charging statutes listed below. The form also contained a handwritten statement by his attorney listing what purported to be the three elements for the crime of disorderly conduct. Printed on the form were the constitutional rights that are waived by pleading guilty. Before each explanatory sentence was a checked box. Also, the form contained a paragraph stating: "I have decided to enter this plea of my own free will. I have not been threatened or forced to enter this plea. No promises have been made to me other than those contained in the plea agreement. The plea agreement will be stated in court or is as follows...."
¶5. Although the trial court held a brief colloquy with McClelland, at which time McClelland confirmed that he had signed the guilty plea questionnaire, the trial court never explored McClelland's personal background with him or asked if he had been threatened or forced to enter his plea. The trial court also failed to discuss the constitutional rights he was waiving or to ask McClelland whether he understood that the court did not have to follow any sentencing recommendations. The trial court also made no inquiries about whether McClelland was satisfied with his attorney. While the parties stipulated to parts of the criminal complaint as a factual basis for the plea, McClelland was never asked whether he was convicted of the past crimes contained in the complaint. Approximately two weeks after the plea was entered, McClelland was sentenced to the maximum term of three years' imprisonment.
¶6. Following the sentencing, postconviction motions were filed. McClelland contended that, because the guilty plea colloquy was inadequate, a manifest injustice occurred, and he should be allowed to withdraw his plea. He also argued that the State failed to prove the underlying convictions that resulted in the habitual criminality charge. The State conceded that McClelland made a prima facie case that his plea was accepted in violation of Wis JI-Criminal SM-32, which, by supreme court order, sets forth the method for accepting a guilty plea.
¶7. As a result, the trial court held a hearing at which both McClelland and his former attorney testified. The trial court found that because McClelland admitted that he had signed the guilty plea questionnaire and claimed he understood its contents, and his attorney stated that he had read the questionnaire to McClelland and believed McClelland understood it, McClelland understood that he was waiving his constitutional rights, and the State met its burden of proving that the plea was knowingly, intelligently, and voluntarily entered. The trial court buttressed this conclusion with the fact that McClelland had pled guilty numerous times before. The trial court also found that the habitual criminality charge was proven because the criminal complaint recited the prior convictions.

II. Analysis.
¶8. McClelland contends that the trial court erred in both of its rulings. He argues that, under the totality of the circumstances, the record is insufficient to support a finding that he entered his plea knowingly, intelligently and voluntarily. Further, he submits that he made no admissions to the underlying convictions that were the basis for the habitual criminal charge and the State failed to prove them.
¶9. When a trial court accepts a guilty plea, Wis. Stat. § 971.08 requires the trial court to comply with the factors listed in the statute:
Pleas of guilty and no contest; withdrawal thereof. (1) Before the court accepts a plea of guilty or no contest, it shall do all of the following:
(a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted.
(b) Make such inquiry as satisfies it that the defendant in fact committed the crime charged.
(c) Address the defendant personally and advise the defendant as follows: "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law."
(d) Inquire of the district attorney whether he or she has complied with s. 971.095 (2).
In State v. Bangert, 131 Wis. 2d 246, 389 N.W.2d 12 (1986), the seminal case on guilty plea requirements, the supreme court elaborated on the proper method for taking a plea:
Henceforth, we will also require as a function of our supervisory powers that state courts at the plea hearing follow the provisions set forth in Wis. J I-Criminal SM-32 (1985), Part V, Waiver of Constitutional Rights, or specifically refer to some portion of the record or communication between defense counsel and defendant which affirmatively exhibits defendant's knowledge of the constitutional rights he will be waiving. The court must then, as before, ascertain whether the defendant understands he will be waiving certain constitutional rights by virtue of his guilty or no contest plea. The express duty to inform the defendant of the constitutional rights which he will be waiving, or to ascertain that the defendant possesses such knowledge, may be considered a seventh duty to be followed by the trial courts.
Id., 270-72 (citations and footnote omitted). Later, this court deemed limited use of a guilty plea questionnaire form permissible in lieu of a personal colloquy with the accused. See generally State v. Moederndorfer, 141 Wis. 2d 823, 416 N.W.2d 627 (Ct. App. 1987).
¶10. In order to withdraw a guilty plea, a party is required to show that a manifest injustice occurred. State v. Nawrocke, 193 Wis. 2d 373, 378, 534 N.W.2d 624 (Ct. App. 1995). In State v. Giebel, 198 Wis. 2d 207, 541 N.W.2d 815 (Ct. App. 1995), we set out the burden of proof and requirements for withdrawal of a plea:
A plea which is not knowingly, voluntarily or intelligently entered is a manifest injustice. The defendant bears the burden of showing the necessity for plea withdrawal by clear and convincing evidence.
The procedure the trial court must follow when a defendant maintains that the § 971.08, Stats., procedure is not undertaken or whenever court-mandated duties are not fulfilled at the plea hearing is set forth in [Bangert].
198 Wis. 2d at 212 (citations omitted).
Bangert directs that the burden of proof shifts to the State when the defendant has made a prima facie case "showing that his plea was accepted without the trial court's conformance with [Wis. Stat.] § 971.08 or other mandatory procedures[.]" 131 Wis. 2d at 274. Such defendants must also allege, however, that they did not know or understand the information at issue. Id. If a defendant makes this initial showing, the burden shifts to the State to show by clear and convincing evidence that the plea was knowingly, voluntarily, and intelligently entered. Id. At such a hearing, the "State may also utilize the entire record to demonstrate ... that the defendant knew and understood the constitutional rights which he would be waiving." Id. at 275.
We perceive that this remedy which switches the burden of production and persuasion to the state will encourage the prosecution in a plea hearing proceeding to assist the trial court in meeting its sec. 971.08 and other expressed obligations. On the other hand, permitting the state to show by clear and convincing evidence that the totality of the circumstances demonstrates a knowing and voluntary plea in fact achieves the requirement of the constitutional standard.
Id. at 275. Following such a hearing, "[t]he trial court's findings of evidentiary or historical facts will not be upset on appeal unless they are contrary to the great weight and clear preponderance of the evidence." Id. at 283-84.
¶11. As a preliminary matter, McClelland argues that the trial court erred when it approved the State's request to amend the charge to disorderly conduct. McClelland claims this action was contrary to the holding in State v. Tawanna H., 223 Wis. 2d 572, 590 N.W.2d 276 (Ct. App. 1998). McClelland is wrong. Tawanna H. is distinguishable and not dispositive.
¶12. Tawanna H. involved a juvenile who was charged with battery. A court trial was held. At the conclusion of the trial, the trial court ruled that the State had not met its burden of proof. Id. at 575. Rather than dismissing the case, the trial court sua sponte amended the charge to disorderly conduct and adjudged her delinquent. Id. Tawanna's conviction was later overturned on appeal. This court explained: "Because the trial court's amendment occurred without notice to Tawanna, the amendment was in violation of [Wis. Stat.] § 938.263 ... and prejudicial as her due process rights were violated." Id. at 575-76. Section 938.263 is a juvenile justice code provision requiring "reasonable notification" before any amendment could be granted. Unlike the circumstances in Tawanna H., McClelland is not a juvenile, and the amendment occurred before the trial. Consequently, no due process violation occurred.
¶13. Next, McClelland submits that because he was incorrectly advised of the elements of disorderly conduct on the guilty plea questionnaire, he is entitled to withdraw his plea. Again, this court disagrees.
¶14. The questionnaire signed by McClelland contained his attorney's handwritten information. His attorney listed three elements for the charge of disorderly conduct: "(1) In public place [sic] (2) Engage in loud, boisterous, violent, profane and otherwise disorderly conduct (3) which tends to cause [a] disturbance." However, Wis JI-Criminal 1900 lists only two elements for the crime of disorderly conduct: "1. The defendant engaged in (violent) (abusive) (indecent) (profane) (boisterous) (unreasonably loud) (or otherwise disorderly conduct). 2. The conduct of the defendant, under the circumstances as they then existed, tended to cause or provoke a disturbance." There is no dispute that the conduct complained of occurred in a public place. Consequently, while McClelland's attorney erred in listing "a public place" as an element of the crime, the error was harmless as the questionnaire was, in all other respects, accurate. Moreover, the trial court specifically paraphrased the elements to McClelland when it said: "And as a result of that amendment, it is alleged on July 4th, 2002, at 4063 North 26th Street in the City of Milwaukee, that you did by your conduct tend to cause or provoke a disturbance."
¶15. McClelland's primary argument concerning his guilty plea is his contention that the trial court failed to provide him with certain necessary information in its colloquy and the State never met its burden of proof after the burden was shifted. He claims that the trial court failed to: (1) discuss the fact that his plea would result in a waiver of certain constitutional rights; (2) inform him that the court was not bound by any plea negotiations and was free to sentence him within the maximum penalty allowed; (3) ask whether any threats or promises had been made to induce him to plead guilty; or (4) inquire whether McClelland was satisfied with his legal representation. In this regard, this court agrees that the guilty plea colloquy was flawed and the State failed to prove that McClelland knowingly, intelligently, and voluntarily entered his plea.
¶16. The State concedes that the plea colloquy was flawed and that a hearing was required. Consequently, the State had the burden of proving McClelland knowingly, intelligently, and voluntarily entered his plea.
¶17. The only testimony presented at the postconviction hearing was that of McClelland and his trial attorney. Unfortunately, the trial attorney had no independent recollection of the guilty plea hearing, although he acknowledged that his handwriting appeared on the questionnaire. Indeed, his testimony was confined to his recitation of his general practices when he represents a defendant at a guilty plea hearing. Consequently, he shed no light on what transpired before McClelland's plea was actually taken.
¶18. McClelland also testified. McClelland related that after he learned of the amended charge, he spoke to his attorney for only ten minutes while he was in a glass-enclosed bull pen with his attorney on the other side of the glass. McClelland claimed his attorney told him the penalty for disorderly conduct was ninety days, and that there was no discussion concerning the elements of this new charge. On cross-examination, McClelland first denied signing the guilty plea questionnaire, but later acknowledged that his signature was on the bottom of the second page. Despite the language found immediately before the signature line, McClelland denied knowledge of its contents. This paragraph read:
I have reviewed and understand this entire document and any attachments. I have reviewed it with my attorney (if represented). I have answered all questions truthfully and either I or my attorney have checked the boxes. I am asking the court to accept my plea and find me guilty.
McClelland maintained that he never read the entire document and that his attorney only read him the portion dealing with the amended charge. McClelland was also adamant that he was not guilty of the charge of disorderly conduct. In response to the court's questions, McClelland stated that his attorney never discussed the portion of the questionnaire that dealt with the constitutional rights that are waived when entering a plea with him. In reaching its conclusion, the trial court commented on McClelland's testimony:
The defendant testified about the plea colloquy with [his defense attorney] and then the Court asked some questions on its own accord which significantly conflicted with the testimony he gave when he was examined by [the assistant district attorney]. And in fact his memory seemed to be much clearer as to things that he reviewed with [his defense attorney] which lead[s] the court to believe that there were some substantial inconsistencies that were not related to his memory, but his credibility.
Other than this statement, the trial court made no additional findings regarding the events which led to the guilty plea hearing or the testimony of McClelland and his attorney, other than commenting on his attorney's lack of a clear recollection. The trial court also failed to address how the deficiencies in the colloquy were remedied by the testimony presented at the hearing.
¶19. In reaching its determination that the State met its burden, the trial court principally relied on the guilty plea questionnaire transcript, including the defense attorney's statements that he believed McClelland understood his constitutional rights. The trial court also reasoned that because McClelland had previously pled guilty to other crimes, he knew his rights, and thus his plea was entered knowingly, intelligently, and voluntarily.
¶20. While Moederndorfer approved the use of guilty plea questionnaire forms, the form approved in Moederndorfer is different from the form here. Procedurally, the facts are also different. In Moederndorfer, the guilty plea questionnaire was more extensive:
The three-page form used here details each constitutional right waived. The form directs the defendant to individually initial each paragraph explaining the particular constitutional right being waived if the paragraph is understood.
141 Wis. 2d at 827. Initials present stronger proof that the party has read the questionnaire than do checked boxes. The form McClelland signed was only two pages long, and no initialing was required. Additionally, the Moederndorfer court approved the use of the guilty plea questionnaire based on its belief that the guilty plea questionnaire form was read in an unhurried atmosphere.
People can learn as much from reading as listening, and often more. In fact, a defendant's ability to understand the rights being waived may be greater when he or she is given a written form to read in an unhurried atmosphere, as opposed to reliance upon oral colloquy in a supercharged courtroom setting. A trial court can accurately assess a defendant's understanding of what he or she has read by making a record that the defendant had sufficient time prior to the hearing to review the form, had an opportunity to discuss the form with counsel, had read each paragraph, and had understood each one.
Id. at 828.
¶21. The sparse record from the guilty plea hearing supports McClelland's claim that the atmosphere was hurried at the time the guilty plea questionnaire was completed. McClelland went to court expecting to be tried for battery. Outside of his presence, the trial court amended the charge to disorderly conduct. Shortly thereafter, he pled guilty to the newly-amended charge.[3] Consequently, it appears that McClelland's attorney had little time to explain the new charge of disorderly conduct and little opportunity to read, explain and discuss the guilty plea questionnaire with McClelland. Thus, the statement made by McClelland's attorney at the guilty plea proceeding, that he believed McClelland understood his constitutional rights, is suspect. Moreover, an attorney's testimony regarding his or her general practice does not provide solid evidence of what occurred at a long-forgotten interview. See State v. Van Camp, 213 Wis. 2d 133, 147, 569 N.W.2d 577 (1997).
¶22. Additionally, the trial court's reliance on McClelland's prior guilty pleas to shore up the gaps in this guilty plea proceeding is also misplaced. A defendant's alleged knowledge of his constitutional rights in the past does not necessarily establish his knowledge at the time of the current plea:
[A]lthough the reviewing court may look to the record as a whole to show that the defendant understood the waiver of his constitutional rights, the defendant's understanding must be measured at the time the plea is entered[, and] the fact that a defendant was told sometime earlier of his rights is not necessarily determinative of whether he understood those rights at a later time.
Id. at 149 (citations omitted).
¶23. Thus, an evaluation of the available evidence belies the trial court's finding. No solid evidence exists showing that McClelland: (1) was actually aware of the constitutional rights he was waiving; (2) knew that the court was free to disregard all sentencing recommendations; (3) had not been threatened or coerced into pleading guilty; and (4) was satisfied with his legal representation. The state of the record leads to only one conclusion-that the State failed to meet its burden of proof. Consequently, the trial court erroneously exercised its discretion when it found that it did.
¶24. In light of the court's ruling, there is no need to discuss McClelland's second argument concerning the habitual criminality charge. Gross v. Hoffman, 227 Wis. 296, 300, 277 N.W. 663 (1938) (stating that if a decision on one point disposes of the appeal, then the appellate court need not decide other issues raised). The trial court's decision is reversed and matter is remanded to permit the withdrawal of the plea.
By the Court.  Judgment and order reversed and cause remanded.
NOTES
[1] This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2).
[2] All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[3] After the State had earlier informed the court it was not ready to proceed, the record reflects that McClelland's case was recalled and his attorney returned to the courtroom at approximately 10:00 a.m. At that time, the trial court amended the charge over defense counsel's objection. The case was passed again for a short time. When it was recalled, the guilty plea proceeding began. Thus, it appears that McClelland's guilty plea proceeding took place in the morning shortly after his attorney returned.