COURT OF APPEALS
DECISION
DATED AND FILED

February 27, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1494-CR**

Cir. Ct. No. 2020CF410

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MARCUS WILLIAMS,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Jefferson County: BENNETT J. BRANTMEIER, Judge. *Affirmed*.

Before Kloppenburg, P.J., Graham, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Marcus Williams, by counsel, appeals his judgment of conviction and a circuit court order denying his postconviction

motion for plea withdrawal without an evidentiary hearing. Williams argues on appeal that his no contest plea to the charge of attempted battery to a law enforcement officer with use of a dangerous weapon was entered unknowingly because the circuit court did not properly explain the intent element of the charge to him. We reject this argument and affirm the judgment and order of the circuit court.

*Background*

¶2 The criminal complaint states the following. A police officer conducted a traffic stop of a vehicle in which Williams was a passenger. Williams and the other occupants got out of the vehicle. Another officer arrived on the scene with a law enforcement canine. Williams went back to the vehicle, opened the vehicle door, and released a large pit bull dog from the vehicle. The dog ran at an officer and his canine, and began jumping and biting. Williams was charged with attempted battery to a law enforcement officer with the use of a dangerous weapon (the dog), as a repeater, as well as resisting an officer and possession of drug paraphernalia. Pursuant to a plea agreement, Williams pled no contest to the attempted battery count. *See* WIS. STAT. §§ 940.203(2), 939.63(1)(c), 939.32, and 939.62(1)(b).[1] He was sentenced to eighteen months of initial confinement and eighteen months of extended supervision, to run consecutive to any other sentence.

¶3 Williams filed a postconviction motion for plea withdrawal, arguing that his plea was not knowingly or intelligently made because the circuit court did not adequately explain the intent element of the crime of attempted battery.

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

Williams further argued that the alleged defect in the plea colloquy was compounded by his intellectual disability. The circuit court denied the postconviction motion without a hearing, concluding that Williams failed to make a prima facie case that the plea colloquy was defective. Williams appeals.

*Discussion*

¶4     On appeal, Williams argues that his plea was not knowingly given because the circuit court erred during the plea colloquy by not adequately explaining to Williams the specific intent element of the crime to which he pled, particularly in light of his intellectual disability. The real issue on appeal, however, is whether the circuit court erred in failing to hold an evidentiary hearing on Williams's motion to withdraw his plea based on a defective plea colloquy. *State v. Howell,* 2007 WI 75, ¶2, 301 Wis. 2d 350, 360, 734 N.W.2d 48.

¶5     To be constitutionally valid, a plea must be knowing, intelligent, and voluntary. *See id.*, ¶23. To ensure the plea is sound, a circuit court must address a defendant personally, following WIS. STAT. § 971.08 and certain judicial mandates. *See id.*, ¶26; *see also* **State v. Bangert**, 131 Wis. 2d 246, 274, 389 N.W.2d 12 (1986). The purpose of these duties is to inform the defendant of the nature of the charge, to ascertain the defendant's understanding of the charge, and to ensure that the defendant is aware of the constitutional rights being waived. *Howell*, 301 Wis. 2d 350, ¶26.

¶6     One of the circuit court's statutory obligations is to ensure that the defendant understands the nature of the charge against the defendant. WIS. STAT. § 971.08(1)(a). To understand the nature of the charge, the defendant must be aware of all the essential elements of the crime. **State v. Nichelson**, 220 Wis. 2d 214, 218, 582 N.W.2d 460 (Ct. App. 1998). A defendant who alleges that the

circuit court failed to fulfill its plea colloquy duties may bring a postconviction motion, referred to as a ***Bangert*** motion, for plea withdrawal based upon the plea not being knowing, intelligent, and voluntary. ***Howell***, 301 Wis. 2d 350, ¶27.

¶7      The circuit court must conduct an evidentiary hearing on such a motion "if (1) the motion makes 'a *prima facie* showing that [the] plea was accepted without the trial court's conformance with [its mandatory duties],'" and (2) the motion alleges that the defendant did not know or understand the information that should have been provided at the plea colloquy. ***Id.***  If the defendant's motion meets both prongs to require an evidentiary hearing, the State has the burden to prove at the hearing that the plea was knowing, intelligent, and voluntary. ***Id.***, ¶29.  Whether a defendant has made a prima facie showing of a defective plea colloquy entitling the defendant to an evidentiary hearing is a question of law that this court reviews de novo. ***Id.***, ¶31.

¶8      Here, Williams argues that the plea colloquy was defective under ***Bangert*** because the circuit court did not explain to him the specific intent element required for the State to prove the crime of attempted battery of a law enforcement officer.  In support of this argument, Williams cites the following portion of the plea hearing transcript, where the court summarized the elements of the crime, which was charged in the complaint as Count 10:

> THE COURT: Do you understand that the State would have to prove each and every element of the offense beyond a reasonable doubt in order to obtain a conviction?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Here, the elements of Count 10 are:
>
> One, that you attempted to cause or threaten to cause bodily harm to the victim;
>
> Two, the victim was a law enforcement officer;

> Three, that you knew the victim was a law enforcement officer;
>
> Four, that you attempted to cause or threaten to cause bodily harm in response to an action taken in the law enforcement officer's official capacity;
>
> Five, you caused or attempted to cause or threatened to cause bodily harm without the consent of the victim;
>
> And six, that you acted intentionally.
>
> Do you understand each of these elements that would need to be proven in order for you to be convicted?
>
> THE DEFENDANT: Yes, I understand.

¶9 Williams argues that, within the portion of the plea colloquy quoted above, the circuit court failed to properly explain the intent element of the crime. In other words, Williams asserts that the court's statement that "you acted intentionally" did not ensure that Williams understood that the intent element required the State to prove that he intentionally attempted to cause physical harm to the law enforcement officer when he released the pit bull dog from the vehicle. Williams argues that the court's insufficient explanation of the intent element was compounded by the fact that he has an intellectual disability. As support for his assertion that he has an intellectual disability, Williams attached to his postconviction motion a psychologist's report, dated November 1, 2022, in which the psychologist diagnosed Williams with moderate intellectual development disorder.

¶10 Having reviewed the entirety of the circuit court's statements during the plea hearing as set forth in the hearing transcript, we conclude that Williams has failed to make a prima facie showing that the plea colloquy was defective for failing to sufficiently inform Williams of the nature of the charge and the "intent" element.

5

¶11 First, the transcript shows that the circuit court conducted a standard plea colloquy by inquiring into Williams's ability to understand the proceedings and the voluntariness of his plea decision, and further exploring his understanding of the nature of the charges, the penalty range and other direct consequences of the plea, and the constitutional rights being waived. *See* WIS. STAT. § 971.08; *State v. Hoppe*, 2009 WI 41, ¶18, 317 Wis. 2d 161, 765 N.W.2d 794; *Bangert*, 131 Wis. 2d at 266-72.

¶12 Concerning the specific intent element of the attempted battery charge, the circuit court sufficiently reviewed this element with Williams during the plea colloquy. The court began the plea hearing by reading the attempted battery charge as set forth in the information, including the allegation that Williams "attempted to intentionally cause bodily harm to … a law enforcement officer," and reviewing the maximum penalties that the court could impose on this conviction. Williams indicated that he understood the charge and the possible maximum penalties.

¶13 The circuit court also reviewed Williams's signed plea questionnaire with him, which included an attached document setting forth the elements of the attempted battery of a law enforcement officer offense. Williams confirmed with the court that he understood the information contained in the plea questionnaire, that he had gone over the plea questionnaire and attached documents with his attorney prior to signing the questionnaire, and that he had no questions for the court about the questionnaire or attached documents. *See State v. Moederndorfer*, 141 Wis. 2d 823, 827-28, 416 N.W.2d 627 (Ct. App. 1987). As it began to review the plea questionnaire and attached documents with Williams, the court stated that it wanted to ensure that Williams fully understood the proceedings and asked

Williams to please indicate at any time if he was not understanding any aspect of the proceedings. Williams indicated that he would do so.

¶14 One of the documents attached to the plea questionnaire that the circuit court reviewed with Williams set forth the six elements of the attempted battery to a law enforcement officer charge, along with the corresponding jury instruction number. Williams indicated to the court that he had reviewed the document with counsel and understood the document. The court also explicitly stated that the State would have to prove every element of the offense of attempted battery to a law enforcement officer beyond a reasonable doubt and reviewed each element with Williams, including the last element, which required the State to prove that Williams acted intentionally in attempting to commit the battery. When the court asked Williams if he understood "each of those elements," Williams replied, "Yes, I understand." Williams never indicated to the court that he had any questions about the elements of the offense to which he pled or otherwise expressed any confusion.

¶15 The circuit court stated on the record that the plea questionnaire indicated that Williams was receiving treatment for a mental illness or disorder. The court asked whether Williams's mental illness or disorder impaired his ability to understand the proceedings or the consequences of his plea in any way. Williams replied, "Some of it because I have ADHD, so I have problems understanding some of the stuff." The court followed up by asking whether, after going over the documents and being counseled by his attorney, Williams felt like he understood the nature of the plea and the consequences of it. Williams replied, "Yes."

¶16    Based on all of the above, we conclude that Williams has not made a prima facie case that the circuit court's plea colloquy was defective by insufficiently discussing the nature of the crime to which Williams pled and the elements of the crime that the State would have to prove at trial. The court reviewed the elements of the offense to which Williams pled, which were also attached to the plea questionnaire. Williams also indicated that he reviewed the plea questionnaire and the attached documents with his counsel and repeatedly told the court he understood the crime with which he was charged. Further, when discussing the treatment Williams was receiving for a mental illness or disorder, and his ADHD diagnosis in particular, the court specifically asked whether Williams was able to understand the nature and consequences of his plea. Williams responded in the affirmative.

¶17    Williams's claim that the colloquy was defective is premised on an incorrect assumption that courts have a duty to fully explain each individual element of the crime pled. Such an assumption is inconsistent with established case law. A "circuit court is not expected to explain every element of every charge in every case." **Brown**, 293 Wis. 2d 594, ¶58; *see also* **State v. Trochinski**, 2002 WI 56, ¶20, 253 Wis. 2d 38, 644 N.W.2d 891 ("**Bangert** and subsequent cases do not require a court thoroughly to explain or define every element of the offense to the defendant."). Here, the fact that the circuit court did not further explain the meaning of the intent element does not render the plea colloquy defective.

¶18    Williams also relies upon the psychologist's report and his diagnosis of moderate intellectual disability, both obtained in 2022, to advance an argument that his disability required the circuit court to give him a more detailed explanation of the intent element of the crime to which he pled. Williams's reliance on the

2022 diagnosis and report is misplaced within the context of his argument for plea withdrawal under ***Bangert***. The report and diagnosis are extrinsic evidence that did not exist at the time of Williams's plea, which was entered in August 2021.

¶19 If Williams had advanced an argument for plea withdrawal based on ***State v. Bentley***, 201 Wis. 2d 303, 548 N.W.2d 50 (1996), extrinsic evidence may have been relevant in determining whether Williams was entitled to an evidentiary hearing on his claim. Unlike a ***Bangert*** claim, which alleges a defect in the plea colloquy and relies on information "in the record," ***Brown***, 293 Wis. 2d 594, ¶64 (emphasis omitted), a ***Bentley*** claim seeks to establish a manifest injustice by proving "that some factor extrinsic to the plea colloquy ... renders a plea infirm." ***Howell***, 301 Wis. 2d 350, ¶74. It is permissible for a defendant to file dual motions under both ***Bangert*** and ***Bentley***. ***Brown***, 293 Wis. 2d 594, ¶42; ***Howell***, 301 Wis. 2d 350, ¶73. However, that is not the path that Williams took here. Williams filed only one postconviction motion, alleging a defect in the plea colloquy under ***Bangert***. His postconviction motion does not cite or purport to raise a claim under ***Bentley***. Accordingly, the extrinsic evidence contained in the 2022 psychologist's report is not relevant to the merits of Williams's motion for an evidentiary hearing on his plea withdrawal claim brought pursuant to ***Bangert***.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.